IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAINT ANTHONY HOSPITAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-02561 |
| | ) | |
| THERESA EAGLESON, in her official capacity as Director of the Illinois Department of Healthcare and Family Services, | ) ) ) ) ) | Honorable Steven C. Seeger |
| | ) | |
| Defendant. | ) | |

**SAINT ANTHONY HOSPITAL'S REPLY TO DEFENDANT'S
RESPONSE (Dkt. 51) TO MANAGED CARE ORGANIZATIONS'
MOTIONS TO INTERVENE, COMPEL ARBITRATION, AND STAY**

HFS would like this lawsuit to go away without addressing its maladministration of the Medicaid system that caused it to be filed. Its Response (Dkt. 51, "HFS Resp.") fully embraces the MCOs' Motions to intervene, to compel Saint Anthony Hospital to arbitrate with the MCOs, and to stay this lawsuit. In support it offers myths and strawmen. It attacks its own imaginary version of a complaint that Saint Anthony did not file, rather than the actual complaint. HFS seeks to duck its federal statutory duty to Saint Anthony to ensure prompt payment of clean claims and to provide transparency as to what is being paid. Instead it seeks to shunt Saint Anthony to arbitrations that will not address the issues in this lawsuit, or solve the pressing structural and systemic problems that only this case can address.

**1.    HFS Has Already Conceded a Pivotal Fact That No Arbitration Can Negate.**

A simple question lies beneath the surface of HFS's submissions (as well as the MCOs' Motions): If the MCOs have been paying "clean claims" within the 30/90-day prompt payment periods that federal law require that HFS "ensure," why doesn't HFS just say so, and present the

proof? It is also telling that none of the MCO movants has asserted that it consistently complied with these requirements, and one, CountyCare has indisputably been in massive violation. Both it and HFS acknowledge that it had siphoned off federal Medicaid dollars to pay Cook County's non-Medicaid obligations. (*See* Dkt. 57, Saint Anthony Resp. to MCOs Mot., at 4-5 & Exs. 1-3.)

The reason HFS cannot make this simple assertion is underscored by an important admission in HFS's motion to stay the preliminary injunction proceedings (Dkt. 43): *HFS does not know if the MCOs are paying on time. It does not have the information needed to determine whether they are paying on time because HFS has not required the MCOs to give it that information*. This is the agency of Illinois government charged with administering over $10 billion annually in federal Medicaid funds based on its commitment to the federal government to "ensure" Medicaid claims are paid "in a timely manner," including the 30/90-day payment Rule for clean claims. Yet it has not asked the MCOs for that most basic information. HFS admits that it does not require MCOs to report to HFS whether they pay providers on time in compliance with this payment mandate.

HFS tracks average time to *adjudicate* claims, but not the average time for MCOs actually to *pay* providers' clean claims. (*See* Dkt. 56-7, Ray Decl. ¶ 43 (the data collected by HFS "indicates that, on the aggregate, the MCOs are generally adjudicated [*i.e.,* determining whether to pay or deny] claims within 30 days of receipts from healthcare providers, although there are some exceptions.").) Moreover, HFS does not track *any* provider-specific data. (Dkt. 56, HFS Reply, at 7 ("the Department does not have this type of provider-specific data because it collects *aggregate* date for each MCO").) Thus, HFS is failing to collect relevant data – the MCOs' time to pay clean claims – on either an aggregate basis or on a provider-by-provider

2

basis.  HFS's position, therefore, is that it needs to delay the case and get discovery from third parties *in order to determine if it is complying with federal law*.

That is powerful evidence of exactly the lack of oversight that caused Saint Anthony to file its complaint.  It is not possible for HFS to "ensure" compliance without compiling the data needed to determine compliance.  No arbitration – to which HFS fervently wishes the Court to dispatch Saint Anthony – is required to determine the most central of facts of this dispute.  And no arbitration with the MCOs can remedy that egregious breach of duty by HFS.

Saint Anthony's complaint asks the Court to require HFS to take the blinders off and pay direct attention to the payment metric that Congress has commanded HFS to use to ensure that the MCOs meet the standard going forward.  That requires no adjudication or arbitration of any particular claim or claim denial.  It merely requires HFS to do the job that Congress assigned to it: Pay attention.  HFS must monitor their compliance with the prompt payment obligations and exercise the authority it has over the MCOs to bring them into compliance if they are not.  Congress permits HFS to delegate the payment process to MCOs, not to wash its hands of the entire process.

HFS has repeatedly asserted in its briefs that prompt payment is neither its problem nor responsibility to fix.  (*E.g.*, Dkt. 24, HFS Mot. to Dismiss, at 18-19; Dkt. 51, HFS Resp. at 3.)  It goes so far as to argue that the 30/90-day federal mandate does not exist when MCOs pay hospitals – a position contradicted by every relevant source of legal authority, in addition to HFS's own out-of-court guidance to providers that the rule does apply.  (*See* Dkt. 24, HFS Mot. to Dismiss, at 10-14; Dkt. 26, Saint Anthony Resp. to Mot. to Dismiss, at 2-9.)  Each of HFS's filings asks the Court either to redefine the problem or find it to be someone else's problem to fix.  HFS's motion to dismiss argues that Saint Anthony cannot sue it to enforce any timing

3

obligation – contrary to the case law on the subject. Its recent filings argue that it is up to Saint Anthony and the MCOs to fix the problem themselves. According to HFS, it need not even defend its lack of oversight over the billion-dollar health insurance companies. Rather, each provider – many of which are modest safety-net hospitals like Saint Anthony or individual practitioners – must forego adjudication of its federal rights under Section 1983 against the State, in favor of private arbitrations against non-parties, the MCOs – in arbitrations in which the federal rights at issue cannot be determined because HFS is not a party.

As shown in Saint Anthony's response to the MCOs' Motions, the MCOs' attempt to force arbitrations and stop this case is legally unsound and should be denied. HFS's eager support of that attempt is a disappointing abdication of its statutory and public responsibility.

**2.     HFS's Cases Are Inapposite: None Involved Non-Arbitrable Section 1983 Claims.**

If string cites to cases not on point were enough, HFS would win. But numbers of case cited is not the test. Still conspicuously absent from HFS's filings (as well as the MCOs' Motions) is a single case staying a clearly non-arbitrable Section 1983 lawsuit asserting federal claims against a state or local governmental in favor of arbitrating factual issues with private parties who contracted with the plaintiff. That is because the strong mandate to exercise federal jurisdiction over such claims under *Moses H. Cone* and similar cases is compelling. (*See* Dkt. 57, Saint Anthony's Resp. to MCOs Mot., at 15-18.) The arbitration clauses in Saint Anthony's contracts with the MCOs did not waive its right to sue the State for violations of its duties, whether or not the State's violations have some factual overlap with MCO conduct.

HFS cites thirteen cases as examples of courts granting stays pending arbitration. (*See* Dkt. 51, HFS Resp., at 6-7 & n.7.) HFS misrepresents the first case, *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966 (7th Cir. 2007). The district court *denied* the request to stay

non-arbitrable claims pending arbitration of related claims, and the Seventh Circuit affirmed. 474 F.3d at 972. The general point HFS makes is wholly unremarkable: courts have discretion to stay non-arbitrable claims pending arbitration. But as Saint Anthony explained in its Response to the MCOs Motions, (Dkt. 57 at 16), that discretion is governed by principles of parallel-proceeding abstention and the strongest of guidance from the Supreme Court that the duty to hear federal claims can only be deferred if the alternate forum can provide both a complete and a timely remedy. HFS agrees that the parallel-proceeding abstention rule controls. (Dkt. 51, HFS Resp. at 6 n.5.) The rule requires that absent a compelling reason to do otherwise, federal courts are duty-bound to exercise their jurisdiction. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25-26 (1983) ("[O]ur task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice . . . to justify the surrender of that jurisdiction"); *AAR Intern., Inc. v. Nimelias Enterps. S.A.*, 250 F. 3d 510, 517-18 (7th Cir. 2001) ("[B]ecause the federal courts have a 'heavy obligation' to exercise jurisdiction, 'only the clearest of justifications will warrant dismissal' of the federal action in deference to a concurrent state proceeding in the name of wise judicial administration."). *See also, e.g.*, *Hudson v. Deutsche Bank AG*, No. 05 C 6783, 2007 WL 1018137 (N.D. Ill. Mar. 30, 2007) (applying parallel-proceeding abstention principles to deny stay pending arbitration). That conclusion is particularly true in a case, like this, where a private party seeks redress for government violating federal law under Section 1983. *See McDonald v. City of West Branch, Michigan, et al.*, 466 U.S. 284, 290 (1984) ("[A]lthough arbitration is well suited to resolving contractual disputes, our decisions . . . compel the conclusion that it cannot

provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard.").

Also conspicuously absent from HFS's Response is even an attempt at analogizing any of the cited cases to this lawsuit. Its cases, collectively, stand for the legal truism that case-specifics determine whether to grant a stay. Most of HFS's cases involved guarantor or parent/subsidiary situations similar to those cited by the MCOs. None is anything like Saint Anthony's Section 1983 statutory claims against HFS. (*See* Dkt. 57, Saint Anthony Resp. to MCO Mot., at 18-20.)

**3.     This Court Should Consider the Claims Saint Anthony Alleged, Not the Phantom Claims HFS Has Conjured.**

HFS falsely portrays Saint Anthony's claims and the relief it seeks.

**a.     Saint Anthony is not asking that HFS monitor every claim.**

HFS argues that Saint Anthony seeks to make it responsible "to *personally* ensure that *every* MCO timely pays Medicaid claims by *every* provider." (Dkt. 51, HFS Resp. at 3 (italics in original).) This assertion is not true.

Saint Anthony is not arguing that HFS must review every single claim adjudication. Saint Anthony is, however, asking HFS to create and manage procedures, practices and enforcement mechanisms that will cause the MCOs to comply with the statutory timetable for payment. That does not require scrutinizing every claim. Nor does it require judicial or arbitral scrutiny of any particular claim dispute. The focus of Saint Anthony's complaint and the relief it seeks is for HFS to bring itself into compliance through procedures and practices that HFS could undertake, but has not, to implement the federal statutory rule on ensuring prompt payment.

The MCOs obviously know when they have received, adjudicated, and paid provider claims. They obviously have that data. They also know whether they contend further information is necessary for the claim to be paid – i.e., whether the claim was "clean." HFS can

6

and should require the MCOs to report that information to them, including the data regarding the timing of its payment of "clean claims." Each should be required to report on whether there are providers as to whom it is failing to meet the statutory mandate. But, as noted above, HFS admits that it has not sought or tracked this information. The Court should require HFS to do so to "ensure" statutory compliance. That is a matter of federal law that no arbitration can or should decide.

In page 7 of its Reply in support of its motion to continue the preliminary injunction (Dkt. 56), HFS attempts to defend its failure to monitor by misstating the applicable law. It argues, for the first time, that "[t]he Medicaid statute requires the Department only to track each MCO's performance for all of its providers collectively, see 42 U.S.C. § 1396u-2(c)(iii), not for each healthcare provider individually, which would represent a massive task far beyond what is practically justified or legally required." The section HFS cites does not exist. It appears that what HFS meant to cite is 42 U.S.C. §1396-2(c)(1)(A)(iii). But that section does not remotely support its proposition. Rather, it concerns a State's duty to monitor MCO conduct toward *enrollees*, not providers.[1] It says nothing about prompt payment, which, is set forth three

---

[1] The section states (emphasis added):

(A) In general. If a State provides for contracts with medicaid managed care organizations under section 1396b(m) of this title, the State shall develop and implement a quality assessment and improvement strategy consistent with this paragraph. Such strategy shall include the following:

\*\*\*

(iii) Monitoring procedures. Procedures for monitoring and evaluating the quality and appropriateness of care and services **to enrollees** that reflect the full spectrum of populations enrolled under the contract and that includes requirements for provision of quality assurance data to the State using the data and information set that the Secretary has specified for use under part C of subchapter XVIII or such alternative data as the Secretary approves, in consultation with the State.

sub-sections later, in §1396u-2(f). Nor does it state, as HFS argues, that HFS's aggregate approach satisfies its statutory duty to ensure compliance.

      **b.    Saint Anthony is not asking to Court scrap the entire MCO system**.

HFS converts an alternative prayer for relief in the complaint into a bogeyman that it falsely portrays as the centerpiece and goal of Saint Anthony's case. (*See* Dkt. 51, HFS Resp. at 4.) It is important to distinguish Saint Anthony's *claim*, its *injury*, and the alternative *remedies* it seeks.

Saint Anthony's *claim* is that HFS is violating federal law by neither ensuring compliance by the MCOs with the requirement that claims be paid promptly, nor requiring the MCOs to provide transparency regarding the components of the payments they are making. Saint Anthony's *injury* is that it is paid claims late and it receives no breakdown of what is paid, and therefore doesn't know whether or not it has been paid all that is owed. Saint Anthony's requested *remedy* is that HFS *do something* to ensure that clean claims get paid on time and that the payments disclose their component parts, which should include policies and procedures that further achieving this federal requirement. Saint Anthony asked that the Court require HFS to ensure that MCOs pay on time and with transparency, but – in the alternative – that if it cannot and will not do so, it comply with these requirements itself. Contrary to HFS's arguments, that is not scrapping the system. It is asking that the system comply with Congressional command, either through the MCOs or via HFS itself.

      **c.    This Court will not have to wade through 40,000 individual claims.**

Contrary to HFS Resp. at 2, this case will not convert this Court into a referee of 40,000 individual claim disputes. The request for a preliminary injunction in this case is about *when* clean claims are being *paid*, not whether any particular claim has been incorrectly denied. As

noted above, HFS should – but does not – know that information. It should and must if it is to meet its statutory duty to ensure compliance with Congress's prompt payment requirement. If either Saint Anthony or an MCO wishes to resolve any specific dispute, it can serve an arbitration demand after appropriate informal attempts to resolve the issue. The central focus of the motion for preliminary injunction that the parties are in the process of litigating is not about individual claims. It is about the lack of effective procedures from HFS, willful ignorance and toleration of egregious non-performance by MCOs. It is about HFS allowing a welter of disparate rules unique to each separate MCO – all matters that no arbitration can or should resolve.

The same is true regarding transparency, a critical component of Saint Anthony's claims that HFS (and the MCOs) have ignored. The lack of transparency is systemic. The facts are undisputed and require nothing for an arbitrator to decide (and very little as a factual matter for this Court to decide). The MCOs' remittance forms say what they say, and don't say what they should. They simply do not disclose the components of payments, as described in the Stein Declaration. (Dkt. 50-1 at 134-37 ¶ 13.) This Court can and should decide that federal law requires HFS to direct the MCOs to make their payment disclosures sufficient for Saint Anthony and other providers to determine whether they have received payment in full. That requires no adjudication of any claim. It's about information that the MCOs have and should disclose. If HFS required the MCOs to provide this basic information, several salutary effects would result: (i) the disinfectant of sunshine will incentivize MCOs to pay all add-on components they owe as a part of each claim; (ii) providers will have information regarding such payments and can, if they wish, pursue arbitration of those claims on which they believe they were underpaid; and/or (iii) providers can complain to HFS regarding such underpayments and ask for additional

assistance.[2] The prompt payment rule relies upon the principle that claims are being paid in the correct amounts, and transparency is necessary to determine that. Transparency is a component of HFS's obligations under federal law; it does not require this Court to adjudicate any claim dispute and does not require any arbitrator to resolve any issue before the Court can act.

### d. Arbitration and the lawsuit will not lead to inconsistent results.

Once Saint Anthony's actual claim is understood, HFS's purported concern about "inconsistent results" between this case and arbitrations is shown to be non-existent.

First, Saint Anthony is not asking for a dollar judgment against the State or the MCOs. It can seek such relief in arbitrations, but cannot do so in this Court against the State under the Eleventh Amendment. Thus, there is no risk of inconsistent results at the claims level, when only one forum (arbitration) can order MCO payment of individual claims.

Second, the corollary is also true. Saint Anthony cannot bring its federal statutory claims against HFS in arbitration. Therefore, there is no risk that an arbitrator can decide such a claim in a manner inconsistent with this Court's conclusions.

Third, it follows that there also is no risk of inconsistency or prejudice for the MCOs in any arbitration if the Court were to determine that HFS must implement and provide actual oversight of their adherence to the statutory prompt payment mandate and require transparency in their remittances. The prompt payment standard is a federal command. MCOs have a duty to comply regardless of any adjudication anywhere. They may not like it if HFS is found to have a federal duty to take affirmative actions to ensure their compliance and to provide transparency,

---

[2] Conversely, transparency would protect MCOs from false claims that they omitted required components, if they are actually paying them. It is hard to conceive of a pure motive for the MCOs' and HFS's resistance.

but that is not an issue as to which an arbitrator can provide a different ruling, or that they have any right to bring before an arbitrator.

Contrary to HFS Resp. at 9, case law does not hold that a risk of "inconsistent results," alone, suffices to stay non-arbitrable claims. HFS's cases distinguish themselves. None involved a stay of a claim against a third-party to the arbitration agreement, let alone a stay of a Section 1983 claim against a third party that is a government agency. And because *Valentine*, *Elsasser*, and *Riley* each involved arbitrable and non-arbitrable claims between the exact same parties based on the same conduct, all parties would presumably be bound by the arbitrator's findings, and, therefore, additional factors also supported a stay. The same is not true here.

HFS's description of *Riley* is particularly misleading. HFS describes *Riley* as "noting that staying nonarbitrable issues pending arbitration is appropriate when 'arbitrable claims predominate over nonarbitrable claims.'" (Dkt. 51, HFS Resp. at 9.) *Riley* actually held that, on remand, the district court should determine something quite different: "whether a resolution of Riley's arbitrable claims will have a preclusive effect on the nonarbitrable claims that remain subject to litigation. *If there will be such a preclusive effect*, especially if the arbitrable claims predominate over the nonarbitrable claims, then *the district court should consider* whether to stay the federal-court litigation of the nonarbitrable claims pending the arbitration outcome on the arbitrable claims." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 784-85 (10th Cir. 1998) (italics added). The court stated: "the mere fact that piecemeal litigation results from the combination of arbitrable and nonarbitrable issues is not reason enough to stay Riley's entire case." *Id.* (citing *Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511, 1517 (10th Cir. 1995) (holding that "litigation must proceed in a 'piecemeal' fashion if the parties intended that some matters, but not others, be arbitrated")).

11

### e. Arbitration will not be faster, and will deprive Saint Anthony of relief.

Contrary to HFS Resp. at 12, arbitration will expedite nothing, but will seriously harm Saint Anthony, as shown in its Response. (Dkt. 57 at 3-7, 9-10.) No arbitration can decide the federal claims at issue here, or HFS's duties to provide oversight to comply with its federal mandate. Arbitrating hundreds or thousands of individual disputes is a long slog that will not produce what Saint Anthony and all providers are entitled to receive: HFS oversight and enforcement of the prompt payment requirement and implementation of genuine transparency in remittances, issues that are narrow and can be decided reasonably quickly by the Court and implemented generally by HFS.

HFS's "arbitration-is-better" argument is just abdication. Arbitration would be better for HFS because it would let HFS walk away from its statutory duties. It would be better for MCOs because they would not have to account to HFS regarding their compliance, and they can continue to play a shell game with their remittance forms.

But the arbitration-abdication strategy converts HFS's statutory obligations into burdens on providers. HFS is the sole recipient and steward of billions of federal Medicaid dollars. Rather than fulfill its duty to ensure prompt payment to providers, it wants to balkanize the duty into a burden on thousands of providers, including many individual practitioners who did not go to medical school to be litigants. The providers' net worth, time and resources pale in comparison to strength and wealth of the MCOs. It is not practicable for most providers to bear the costs and time burdens of arbitrating thousands of claims. Nor should they have to when federal law requires HFS to provide the basic oversight Saint Anthony seeks to enforce in this case. Instead, a systemic fix by HFS enforcing prompt payment of clean claims and

transparency will solve an important piece of the larger problems. It will also, very likely, reduce the constant fighting between providers and MCOs and eliminate disputes.

## **CONCLUSION**

For the reasons stated above and in Dkt. Nos. 49 & 50, the Court should deny the MCOs' Motions and HFS's Motion to suspend or extend the Preliminary Injunction Motion schedule.

Dated: June 30, 2020

Respectfully submitted,

SAINT ANTHONY HOSPITAL

By:   /s/ Edward W. Feldman
       One of its attorneys