**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SAINT ANTHONY HOSPITAL,

                Plaintiff,

        v.

THERESA EAGLESON, in her official capacity as
Director of the Illinois Department of Healthcare
and Family Services,

                Defendant.

_____

MERIDIAN HEALTH PLAN OF ILLINOIS, INC.,
*et al.*,

                Intervenors.

No. 20 CV 2561

Honorable Steven C. Seeger

Magistrate Judge Sunil Harjani


**DEFENDANT'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

KWAME RAOUL
Attorney General
State of Illinois

Sunil Bhave
Richard S. Huszagh
Jason Kanter
Assistant Attorneys General
Office of the Attorney General
100 W. Randolph Street, 13th Floor
Chicago, IL 60601
Phone: (312) 814-2098
sbhave@atg.state.il.us

## TABLE OF CONTENTS

**Page(s)**

Introduction and Summary of Argument ........................................................................ 1

Argument ........................................................................................................................ 2

   I.   Plaintiff Has No Right to Require the Department to Force MCOs to Pay Hospitals on a 30-Day/90-Day Schedule. ........................................................................................... 2

     A.   Section 1396a(a)(37) and Section 447.45 ...................................................... 2

     B.   Section 1396u-2(f) and Section 447.46 ......................................................... 3

        1.   A State's Only Duty under Section 1396u-2(f) Is to Include in Its Contracts With MCOs a Default Schedule for MCO Payments to Medicaid Providers. ............................ 3

        2.   Section 1396u-2(f) Does Not Require that MCOs Pay Hospitals on a 30-day/90-day Schedule. ............................................................................................. 8

        3.   Plaintiff Cannot Enforce Section 1396u-2(f) under Section 1983. ............................ 14

     C.   Section 1396a(a)(8) ...................................................................................... 21

  II.   The Eleventh Amendment Bars Plaintiff's Claims. ........................................... 23

Conclusion ................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Appalachian Reg'l Healthcare v. Coventry Health & Life Ins. Co.*,
    2012 WL 2359439 (E.D. Ky. June 20, 2012) ................................................... 13, 20

*Appalachian Regional Healthcare v. Coventry Health & Life Ins. Co.*,
    970 F. Supp. 2d 687 (E.D. Ky. 2013) .................................................... 13–14, 20, 21

*Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015) ......................................... 18

*Baylor Univ. Med. Ctr. v. Ark. Blue Cross Blue Shield*,
    331 F. Supp. 2d 502 (N.D. Tex. 2004) ................................................................ 6 n.3

*Bio-Medical Applications of North Carolina, Inc. v. Electronic Data Systems Corp.*,
    412 F. Supp. 2d 549 (E.D. N.C. 2006) .............................................................. 20 n.11

*Blessing v. Freestone*, 520 U.S. 329 (1997) ................................................................................ 15

*Blinder, Robinson & Co. v. S.E.C.*,
    837 F.2d 1099 (D.C. Cir. 1988) .......................................................................... 22

*Bostock v. Clayton Cty., Georgia*,
    140 S. Ct. 1731 (2020) ...................................................................................... 4, 5

*Bourbon Cmty. Hosp., LLC v. Coventry Health & Life Ins. Co.*,
    2016 WL 51269 (W.D. Ky. Jan. 4, 2016) ............................................................ 6 n.3

*Bratton v. Roadway Package Sys., Inc.*,
    77 F.3d 168 (7th Cir. 1996) ..................................................................................... 7

*BT Bourbonnais Care, LLC v. Norwood*,
    866 F.3d 815 (7th Cir. 2017) ................................................................... 15, 19, 20

*C.S. Sewell, M.D. P.C. v. Amerigroup Tennessee, Inc.*,
    2018 WL 6591429 (M.D. Tenn. Dec. 14, 2018) ........................................... 6 n.3, 18

*Cabinet for Human Res. v. N. Ky. Welfare Rights Ass'n*,
    954 F.2d 1179 (6th Cir. 1992) .............................................................................. 9

*Clayworth v. Bonta*,
    140 F. App'x 677 (9th Cir. 2005) ...................................................................... 6 n.3

*Clayworth v. Bonta*,
   295 F. Supp. 2d 1110, 1124–26 (E.D. Cal. 2003)................................................................ 6 n.3

*Cmty. Health Care Ass'n of New York v. Shah*,
   770 F.3d 129 (2d Cir. 2014)............................................................................................... 6 n.3

*Commercial Contractors, Inc. v. United States Fid. & Guar. Co.*,
   524 F.2d 944 (5th Cir. 1975) ................................................................................................... 7

*Concilio De Salud Integral De Loiza, Inc. v. U.S. Dep't of Health & Human Servs.*,
   538 F. Supp. 2d 139 (D.D.C. 2008) ........................................................................... 16, 21 n.12

*Crane v. Shewry*, No. 207CV01639GEBJFM,
   2007 WL 2409665 (E.D. Cal. Aug. 21, 2007) ................................................................ 22 n.13

*Doctors Nursing & Rehabilitation Center, LLC v. Norwood*,
   2017 WL 3838031 (N.D. Ill. Sept. 1, 2017) .................................................................. 22 n.13

*Encino Motorcars, LLC v. Navarro*,
   136 S. Ct. 2117 (2016)............................................................................................................ 11

*Envtl. Def. Fund, Inc. v. E.P.A.*,
   82 F.3d 451 (D.C. Cir. 1996) ................................................................................................... 8

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)............................................................................................................. 9

*Ex parte Young*,
   209 U.S. 123 (1908)........................................................................................................... 23–24

*G. v. Hawaii, Dep't of Human Servs.*,
   703 F. Supp. 2d 1078, 1099 (D. Haw. 2010) ............................................................. 6 n.3, 8 n.4

*Gadelhak v. AT&T Servs., Inc.*,
   950 F.3d 458 (7th Cir. 2020) ............................................................................................... 4, 5

*GE Betz, Inc. v. Zee Co.*,
   718 F.3d 615 (7th Cir. 2013) ............................................................................................... 4, 5

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002)........................................................................................................... 14–16

*Greyer v. Ill. Dep't of Corr.*,
   933 F.3d 871 (7th Cir. 2019) ................................................................................. 4, 5

*Guerrero-Lasprilla v. Barr*,
   140 S. Ct. 1062 (2020) ........................................................................................... 9

*Heckler v. Chaney*,
   470 U.S. 821, 831 (1985) .............................................................................. 5, 7, 17

*Illinois Council on Long Term Care v. Bradley*,
   957 F.2d 305 (7th Cir. 1992) ...................................................................... *passim*

*In re Chicago, R. I. & P. Ry. Co.*,
   168 F.2d 587 (7th Cir. 1948) ................................................................................. 8

*In re Dorner*,
   343 F.3d 910 (7th Cir. 2003) ................................................................................. 8

*In re Zyprexa Prod. Liab. Litig.*,
   489 F. Supp. 2d 230 (E.D.N.Y. 2007) ................................................................ 12

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
   140 S. Ct. 768 (2020) ............................................................................................. 4

*Jama v. Immigration & Customs Enf't*,
   543 U.S. 335 (2005) ............................................................................................... 6

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   130 S. Ct. 2367 (2020) ........................................................................................... 4

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ............................................................................................. 22

*Long Term Care Pharmacy All. v. Ferguson*,
   362 F.3d 50 (1st Cir. 2004) ................................................................................. 18

*Martin v. Soc. Sec. Admin.*,
   903 F.3d 1154 (11th Cir. 2018) ........................................................................... 12

*McCready v. White*,
   417 F.3d 700 (7th Cir. 2005) ............................................................................... 16

*Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*,
    817 F. Supp. 2d 515 (E.D. Pa. 2011) ....................................................................... 8 n.4, 13, 18

*National Medical Care, Inc. v. Rullan*,
    2005 WL 2878094 (D.P.R. Nov. 1, 2005) ................................................................. 14, 20, 21

*New Prime, Inc. v. Oliveira*,
    139 S. Ct. 532 (2019) ........................................................................................................... 4

*Patients' Choice Medical Center of Humphries County, LLC v. Office of the Governor*,
    2009 WL 531861 (S.D. Miss. Mar. 3, 2009) ................................................................... 20 n.11

*Peterson Steels v. Seidmon*,
    188 F.2d 193 (7th Cir. 1951) ............................................................................................... 7

*Prince George's Hosp. Ctr. v. Advantage Healthplan Inc.*,
    985 F. Supp. 2d 38 (D.D.C. 2013) ................................................................................ 7, 8 n.4

*Rio Grande Community Health Center, Inc. v. Rullan*,
    397 F.3d 56 (1st Cir. 2005) ................................................................................................. 21

*Rotkiske v. Klemm*,
    140 S. Ct. 355 (2019) ...................................................................................................... 9, 21

*Saint Francis Med. Ctr. v. Azar*,
    894 F.3d 290 (D.C. Cir. 2018) ............................................................................................ 12

*Seminole Tribe of Fla v. Fla.*,
    517 U.S. 44 (1996) ............................................................................................................. 24

*Seminole Tribe of Fla. v. State of Fla.*,
    11 F.3d 1016, 1028-29 (11th Cir. 1994) ............................................................................ 2411

*Sommerfield v. City of Chicago*,
    252 F.R.D. 407 (N.D. Ill. 2008) ............................................................................................ 3

*Tri-State Water Treatment, Inc. v. Bauer*,
    845 F.3d 350 (7th Cir. 2017) ................................................................................................ 9

*United States v. Blankenship*,
    382 F.3d 1110 (11th Cir. 2004) ............................................................................................ 7

*United States v. Mead Corp.*,
   533 U.S. 218 (2001) ........................................................................ 11

*United States v. Wells Fargo Bank*,
   485 U.S. 351 (1988) ........................................................................ 15

*Walgreen Co. v. Hood*,
   275 F.3d 475 (5th Cir. 2001) ......................................................... 18

*Westside Mothers v. Olszewski*,
   454 F.3d 532 (6th Cir. 2006) ......................................................... 18

*Wyo. Outdoor Council v. United States Forest Serv.*,
   165 F.3d 43 (D.C.Cir.1999) ...................................................... 11–12

**Constitutional Amendment**

U.S. CONST. amend. XI .......................................................................... 23–24

**Statutes**

5 U.S.C. § 553(c) ............................................................................ 12 n.6

28 U.S.C. § 157(d) ........................................................................... 11 n.5

42 U.S.C. § 1395ggg(b)(1)(B)(viii)(II) ........................................... 10 n.5

42 U.S.C. § 1396a(a)(8) .......................................... 21, 22 & n.13, 23

42 U.S.C. § 1396a(a)(13) ..................................................................... 19

42 U.S.C. § 1396a(a)(13)(A) ............................................................... 22

42 U.S.C. § 1396a(a)(30)(A) ............................................................... 18

42 U.S.C. § 1396a(a)(37) ............................................................. *passim*

42 U.S.C. § 1396a(bb)(5) ..................................................................... 21

42 U.S.C. § 1396a(a)(53)(A) .......................................................... 11 n.5

42 U.S.C. § 1396b(g)(2) ................................................................. 10 n.5

42 U.S.C. § 1396b(m) ............................................................................ 5

42 U.S.C. § 1396b(m)(2)(A)(xii) .................................................................... 21 n.12

42 U.S.C. § 1396c .................................................................................................. 16

42 U.S.C. § 1396d(t)(3) ......................................................................................... 5

42 U.S.C. § 1396n(b)(4) ......................................................................... 9, 13, 20–21

42 U.S.C. § 1396-r(i)(1)(A) .............................................................................. 11 n.5

42 U.S.C. § 1396r-8(c)(4)(C)(ii) ...................................................................... 11 n.5

42 U.S.C. § 1396u-2 .............................................................................................. 17

42 U.S.C. § 1396u-2(a)(1)(A)(ii) ....................................................................... 6 n.3

 42 U.S.C. § 1396u-2(e) ..................................................................................... 7, 16

42 U.S.C. § 1396u-2(e)(4)(A) ............................................................................. 5, 7

42 U.S.C. § 1396u-2(e)(4)(B) ............................................................................... 17

42 U.S.C. § 1396u-2(f) ................................................................................... *passim*

42 U.S.C. § 139u-2(h)(2)(B) ................................................................................ 12

42 U.S.C. § 1983 ............................................................................................ *passim*

Pub. L. 97-35 ........................................................................................................... 9

Pub. L. 105-33 ............................................................................................... 8, 10 n.5

Public Law No. 111-5 ........................................................................................... 12

5 ILCS 5/5-30.1(g) ................................................................................................. 2

**Rules**
Fed. R. Bankr. P. 8018 ............................................................................................ 8

Fed. R. Civ. P. 23(c) ......................................................................................... 11 n.5

Fed. R. Civ. P. 24(a) ......................................................................................... 10 n.5

Fed. R. Civ. P. 24(b) ............................................................................................... 10 n.5

**Regulations**

42 C.F.R. § 430.35 ...................................................................................................... 16

42 C.F.R. § 438.14(b)(2)(iii) .......................................................... 11 n.5, 12–13, 19 n.10

42 C.F.R. § 438.60 ................................................................................................... 16–17

42 C.F.R. § 438.206(a) ............................................................................................. 11 n.5

42 C.F.R. § 438.608(a)(4) ........................................................................................... 6 n.3

42 C.F.R. § 438.66(a) ..................................................................................................... 7

42 C.F.R. § 438.66(b) ..................................................................................................... 7

42 C.F.R. § 438.708 .................................................................................................... 7, 16

42 C.F.R. § 438.710 .................................................................................................... 7, 16

42 C.F.R. § 447.45 ...................................................................................................... 12–13

42 C.F.R. § 447.45(d) ................................................................................................. 3, 10

42 C.F.R. § 447.45(d)(2) ......................................................................................... 2, 11, 13

42 C.F.R. § 447.45(d)(3) ......................................................................................... 2, 11, 13

42 C.F.R. § 447.45(d)(4) ............................................................................................... 3 n.2

42 C.F.R. § 447.46 ........................................................................... 2, 11, 12–13, 22 n.13

42 C.F.R. § 447.46(c) ..................................................................................................... 11

67 Fed. Reg. 40989 ......................................................................................................... 9

**Other Authorities**

3 Oxford English Dictionary 773 (2d ed. 1989) ............................................................. 8

## Introduction and Summary of Argument

Plaintiff has abandoned any claim under 42 U.S.C. § 1396a(a)(37). Instead, it now bases its prompt-payment claim against the Department almost exclusively on 42 U.S.C. § 1396u-2(f), which it says obliges state Medicaid agencies, like the Department, not just to *include in their contracts* with MCOs the requirement that the MCOs pay Medicaid providers' claims in accordance with a certain schedule, but to affirmatively *ensure* that MCOs pay claims by all Medicaid providers, including hospitals, under a 30-day/90-day schedule (with 90% of clean claims paid within 30 days, and 99% paid within 90 days). Plaintiff is wrong in three critical respects. *First*, while providers have *contractual* rights against MCOs that they may enforce by traditional means, nothing in the text of the Medicaid Act imposes on state Medicaid agencies an additional *statutory* duty to ensure MCOs always comply with their contractual payment obligations to Medicaid providers, thereby effectively making state Medicaid agencies guarantors of the MCOs' flawless performance of their contractual obligations to providers. That alleged duty is fundamentally inconsistent with the multi-tier, contract-based structure of managed care programs established by Medicaid law, under which providers have contracts and contractual rights with MCOs, not state Medicaid agencies. *Second*, the default schedule for MCO payments to providers prescribed by section 1396u-2(f), which MCOs and providers are expressly allowed to modify in the contracts between them, adopts the 30-day/90-day schedule only for payments to "practitioners" such as doctors, not "other providers" such as nursing homes and hospitals. *Third*, section 1396u-2(f) does not give providers individual rights against state Medicaid agencies that are enforceable under section 1983. And *finally*, Plaintiff's claim against the Department fails for the additional reason that the Eleventh Amendment bars the relief it seeks.

**Argument**

I.     **Plaintiff Has No Right to Require the Department to Force MCOs to Pay Hospitals on a 30-Day/90-Day Schedule.**

Plaintiff contends that a state Medicaid agency "violat[es] federal law by [not] ensuring compliance by the MCOs with the requirement that claims be paid promptly." (Dkt. 68 at 8.) Thus, according to Plaintiff, "[w]hen a state contracts with MCOs," it must "ensure that MCOs pay 90% of claims submitted by a medical provider within 30 days of the MCOs receiving the claim, and . . . 99% of claims within 90 days of receipt — the same requirements for prompt payment imposed on states that administer Medicaid directly." (Dkt. 9 at 4–5) (citing 42 U.S.C. §§ 1396a(a)(37)(A), 1396u-2(f), 42 C.F.R. §§ 447.45(d)(2), (d)(3), 447.46 and 305 ILCS 5/5-30.1(g)). But these provisions of the Medicaid Act and regulations on which Plaintiff relies do not support this characterization of the law, and in fact firmly refute it.[1]

A.     **Section 1396a(a)(37) and Section 447.45**

Plaintiff's complaint relied heavily on 42 U.S.C. § 1396a(a)(37), which applies to direct state payments to Medicaid providers under a fee-for-service model. (Dkt. 1 at ¶¶ 27–28, 79–87.) Section 1396a(a)(37) states that a State's Medicaid plan must "provide for claims payment procedures which . . . ensure" payment, on the 30-day/90-day schedule that Plaintiff invokes, "for services covered under the plan and furnished by health care *practitioners* through individual or group practices or through shared health facilities." 42 U.S.C. § 1396a(a)(37) (emphasis added). But Plaintiff's response to the Department's motion to dismiss does not dispute, or even mention, the Seventh Circuit's holding in *Illinois Council on Long Term Care v.*

---

[1] Although Plaintiff also complains about the Department's supposed failure to require MCOs to provide more "transparent" information when they deny or pay claims (Dkt. 1 at ¶¶ 55–65), Plaintiff does not allege that the Department has a *duty* under federal law to do so, only that "minimum transparency" is an appropriate "remedy" for its prompt payment claims. (Dkt. 26 at 20, n.23.) The Department disputes that, but the insufficiency of these claims thus eliminates the need to address this issue.

2

*Bradley*, 957 F.2d 305, 306, 308–10 (7th Cir. 1992), which held that this schedule in section 1396a(a)(37) applies only to "practitioners" (e.g., doctors) in individual or group practices or shared health facilities, not "other providers," such as nursing homes and hospitals. Thus, Plaintiff has abandoned any claim under section 1396a(a)(37). *See Sommerfield v. City of Chicago*, 252 F.R.D. 407, 419 (N.D. Ill. 2008) ("[F]ailure to properly develop an argument with citation to relevant legal authority and to the record constitutes a forfeiture of the argument.") For similar reasons, Plaintiff's prompt-payment claim finds no support in the associated regulation, section 447.45(d), which governs payments by state Medicaid agencies under a traditional fee-for-service arrangement and, in subsections (d)(2) and (d)(3), which track section 1396a(a)(37)'s 30-day/90-day payment schedule for only "practitioners" in an individual or group practice or who practice in a shared health facility. 42 C.F.R. § 447.45(d).[2]

### B. Section 1396u-2(f) and Section 447.46

As noted, Plaintiff now rests its claim against the Department in this action almost entirely on section 1396u-2(f) of the Medicaid Act, 42 U.S.C. § 1396u-2(f), which controls a state Medicaid plan's managed care provisions governing MCO payments to providers. But section 1396u-2(f) does none of the things that Plaintiff attributes to it.

### 1. A State's Only Duty under Section 1396u-2(f) Is to Include in Its Contracts With MCOs a Default Schedule for MCO Payments to Medicaid Providers.

*First*, section 1396u-2(f) does not impose on state Medicaid agencies the duty that Plaintiff attributes to it — to "ensure" that MCOs pay all providers in accordance with the 30-

---

[2] Plaintiff posits that its complaint also asserts a right to payment within 12 months under section 447.45(d)(4), which sets that deadline for direct state Medicaid agency payments of "all other claims," and applies to non-practitioner providers such as nursing homes and hospitals (Dkt. 26 at 20), despite *Illinois Council on Long Term Care's* holding to the contrary, 957 F.2d at 308, 310. But the Court need not decide whether Plaintiff's complaint does so because, in any event, this regulation cannot create enforceable rights under section 1983. See (Dkt. 24 at 21).

day/90-day schedule Plaintiff invokes. This issue is governed by the principle that statutes must be interpreted according to the ordinary meaning of their plain language, *New Prime, Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019); *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020), and that courts are not free to supplement what Congress enacted based on their views about what would be good policy, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020); *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738, 1753 (2020); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 466 (7th Cir. 2020); *Greyer v. Ill. Dep't of Corr.*, 933 F.3d 871, 879 (7th Cir. 2019) ("[I]t is not a judge's job to add to or otherwise re-mold statutory text to try to meet a statute's perceived policy objectives.") (citations and internal quotation marks omitted); *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 624–25 (7th Cir. 2013). And here, the straightforward meaning of section 1396u-2(f)'s language refutes Plaintiff's interpretation of it.

In contrast with section 1396a(a)(37), which expressly requires the agencies to adopt procedures to "ensure" payments under a specified schedule, section 1396u-2(f) does not require state Medicaid agencies to "ensure" payments to providers on any schedule. Instead, in keeping with the Medicaid Act's framework for managed care programs, in which MCOs enter into separate contracts with state Medicaid agencies and with Medicaid providers, the *sole obligation* that section 1396u-2(f) imposes on state Medicaid agencies is to "provide" in their "contract . . . with [the MCO]" that the MCO pay providers "on a timely basis consistent with the claims payment procedures described in section 1396a(a)(37)(A)," subject to the MCO's and provider's right to agree to a different schedule. 42 U.S.C. § 1396u-2(f). But Plaintiff does not allege that the Department failed to meet that requirement here. Nor could it, as Plaintiff does not dispute that the Department included the provision required by section 1396u-2(f) in its contracts with

the MCOs.  And nothing in the text of section 1396u-2(f) imposes on state Medicaid agencies an additional *implicit* duty to ensure strict performance by MCOs of *their* payment obligations to providers, so that an MCO never breaches those obligations.  Nor is the Court at liberty to add such a duty to the statute that Congress enacted just because doing so might be good policy (which the Department disputes it would be).  See *Bostock*, 140 S. Ct. at 1738, 1753; *Gadelhak*, 950 F.3d at 466; *Greyer*, 933 F.3d at 879; *GE Betz*, 718 F.3d at 624–25.

In addition, absent clear language to the contrary, a State's power to enforce its rights against an MCO, which the Medicaid Act expressly acknowledges, involves a matter within the State's discretion, not subject to private or judicial control.  See 42 U.S.C. § 1396u-2(e)(4)(A) ("In the case of a managed care entity which has failed to meet the requirements of this part or a contract under section 1396b(m) or 1396d(t)(3) of this title, the State shall have the *authority* to terminate such contract . . . .") (emphasis added).  As the Supreme Court explained in *Heckler v. Chaney*, 470 U.S. 821, 831 (1985), "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  And nothing in section 1396u-2(f) suggests that Congress intended to eliminate that discretion in connection with the MCOs' contractual obligations to pay providers under the default schedule section 1396u-2(f) prescribes, or any alternate schedule agreed to by an MCO and an individual provider.

Plaintiff cannot fairly contend, moreover, that reading such an implied duty into section 1396u-2(f) is necessary to prevent frustration of Congress's objectives in enacting it.  Under the statutory scheme that Congress established for managed care programs pursuant to a state plan, where MCOs have separate contracts with state Medicaid agencies and with medical service providers, the providers may enforce their right to timely payment directly under their contracts

with the MCOs — either under the default payment schedule specified in section 1396u-2(f), or under the alternate payment schedule specifically agreed to by the MCO and provider.[3]  No need exists, therefore, to supplement what section 1396u-2(f) *does say* with something it *does not say* to fulfill Congress's goal of enabling Medicaid providers to receive timely payment.  See *Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

Plaintiff's strained reading of section 1396u-2(f) also conflicts with the Medicaid Act's enumeration of specific rights and obligations of state Medicaid agencies vis-à-vis MCOs, such as monitoring the MCOs' performance of their duties under their contracts with the agency, and

---

[3]  The multi-tier structure of managed care programs under a state Medicaid plan, based on contract rights under separate contracts between state Medicaid agencies and MCOs and between MCOs and providers, is widely recognized in the Medicaid Act, regulations, and case law.  See, e.g., 42 U.S.C. § 1396u-2(a)(1)(A)(ii) (referring to "provider agreements with managed care entities"); 42 C.F.R. § 438.608(a)(4) (providing that a "State, through its contract with the MCO," shall require the MCO to notify the State about various events, "including the termination of the provider agreement with the MCO"); *Cmty. Health Care Ass'n of New York v. Shah*, 770 F.3d 129, 137 (2d Cir. 2014) (explaining that under managed care system, "the state enters into a contract with an MCO . . . [and] [t]he MCO, in turn, contracts with a health service provider . . . to provide medical services to its enrollees"); see also *Clayworth v. Bonta*, 295 F. Supp. 2d 1110, 1124–26 (E.D. Cal. 2003) (describing contract-based rights of MCOs and providers under waiver-based managed care program under 42 U.S.C. § 1396n(b)(4)), *rev'd in part on other grounds*, 140 F. App'x 677 (9th Cir. 2005); *G. v. Hawaii, Dep't of Human Servs.*, 703 F. Supp. 2d 1078, 1099 (D. Haw. 2010) ("[I]f the MCOs do not comply with the terms of the QExA Contracts, the Plaintiffs' remedy is a breach of contract action in state court.").  And under this structure, courts have often addressed state-law breach of contract claims by Medicaid providers against MCOs. See, e.g., *C.S. Sewell, M.D. P.C. v. Amerigroup Tennessee, Inc.*, No. 2:17-CV-00062, 2018 WL 6591429, at *5–6, 9 (M.D. Tenn. Dec. 14, 2018) (dismissing Medicaid provider's section 1983 claim against MCO asserting violation of Medicaid Act and regulations, but denying motion to dismiss claim for declaratory relief on provider's state-law "claims for breach of contract . . . and violation of Tennessee's Prompt Payment Act"); *Bourbon Cmty. Hosp., LLC v. Coventry Health & Life Ins. Co.*, No. 3:15-CV-00455-JHM, 2016 WL 51269, at *7 (W.D. Ky. Jan. 4, 2016) (declining to exercise supplemental jurisdiction, after dismissing federal claims by Medicaid provider against MCO, over Medicaid provider's "state law claims for breach of contract [and] breach of Kentucky's prompt pay laws"); *Baylor Univ. Med. Ctr. v. Ark. Blue Cross Blue Shield*, 331 F. Supp. 2d 502, 505, 512 (N.D. Tex. 2004) (remanding to state court Medicaid provider's claims against MCO for breach of contract and violation of state insurance code's prompt payment provisions).

terminating those contracts in specified circumstances, 42 U.S.C. § 1396u-2(e); 42 C.F.R.

§§ 438.66(a), (b), 438.708, 438.710.  This detailed statutory and regulatory monitoring and

enforcement regime excludes implying the additional duty Plaintiff proposes, under which state

Medicaid agencies must never let an MCO breach its contractual obligations to pay providers on

a timely basis.  As a general matter of contract law, a party need not always insist on the other

party's strict performance or enforce its rights in the event of a breach, including for a

performance deadline.  *United States v. Blankenship*, 382 F.3d 1110, 1134 (11th Cir. 2004);

*Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 175 (7th Cir. 1996); *Commercial*

*Contractors, Inc. v. United States Fid. & Guar. Co.*, 524 F.2d 944, 954 (5th Cir. 1975); *Peterson*

*Steels v. Seidmon*, 188 F.2d 193, 195–96 (7th Cir. 1951).  And nothing in the Medicaid Act and

regulations suggests that this principle is inapplicable to a state Medicaid agency's rights under

its contract with an MCO.  To the contrary, the Medicaid Act provides that, if an MCO fails to

fulfill its obligations, a State "shall have the *authority* to terminate [an MCO's] contract" in

specified circumstances, 42 U.S.C. § 1396u-2(e)(4)(A) (emphasis added), contradicting the

notion that state Medicaid agencies have an affirmative *duty* to prevent an MCO from ever

violating those obligations, see *Prince George's Hosp. Ctr. v. Advantage Healthplan Inc.*, 985 F.

Supp. 2d 38, 50 (D.D.C. 2013) ("The fact that the Medicaid statute expressly authorizes such

sanctions [against MCOs] further underscores that it was Congress's intent for states

themselves—rather than private third parties—to police compliance with the requirements of the

Medicaid program."); see also *Heckler*, 470 U.S. at 831 ("An agency generally cannot act against

each technical violation of the statute it is charged with enforcing [because, among other things,

it] must not only assess whether a violation has occurred, but whether agency resources are best

spent on this violation or another[.]").[4]

---

[4]  It is possible that providers, as intended third-party beneficiaries, may enforce certain MCO obligations

### 2. Section 1396u-2(f) Does Not Require that MCOs Pay Hospitals on a 30-day/90-day Schedule.

*Second*, the default schedule for MCO payments to providers in section 1396u-2(f) does not require MCOs to pay hospitals, like Plaintiff, under the 30-day/90-day schedule that it claims. Section 1396u-2(f), added to the Medicaid Act in 1997 by Public Law No. 105-33, § 4708(c), provides that a state Medicaid agency's contract with an MCO must require it to pay Medicaid providers for covered services "on a *timely basis consistent with* the claims payment procedures described in section 1396a(a)(37)(A), unless the health care provider and the [MCO] agree to an alternate payment schedule." 42 U.S.C. § 1396u-2(f) (emphasis added). And, as explained in *Illinois Council on Long Term Care*, the 30-day/90-day schedule specified in section 1396a(a)(37) applies only to practitioners, not other providers like hospitals. 957 F.2d at 306, 308–10. Under section 1396u-2(f)'s plain meaning, therefore, an MCO's contractual payment schedule is "consistent with" section 1396a(a)(37) as long as it is "compatible" with that section — *i.e.*, by requiring compliance with the 30-day/90-day schedule for payments to *practitioners* in individual or group practices or shared health facilities, even if it does not follow that same schedule for *other providers*. See *Envtl. Def. Fund, Inc. v. E.P.A.*, 82 F.3d 451, 457 (D.C. Cir. 1996) ("'consistent' means 'agreeing or according in substance or form,' that is 'congruous' or 'compatible'") (quoting 3 Oxford English Dictionary 773 (2d ed. 1989), *amended*, 92 F.3d 1209 (D.C. Cir. 1996); *In re Chicago, R. I. & P. Ry. Co.*, 168 F.2d 587, 594 (7th Cir. 1948) ("'Consistent with the public interest' is the same as 'compatible with the public interest.'); *see also In re Dorner*, 343 F.3d 910, 913 (7th Cir. 2003) (under Fed. R. Bankr. P.

---

under their contracts with state Medicaid agencies. Compare *Prince George's Hosp. Ctr.*, 985 F. Supp. 2d at 43–51 (holding that provider did not have third-party rights) and *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 528–32 (E.D. Pa. 2011) (same), with *G. v. Hawaii*, 703 F. Supp. 2d at 1099 (leaving open question whether third-party rights exist). But this Court need not decide that issue, which does not change the analysis for Plaintiff's claims against the Department.

8018(a)(1), which states that local bankruptcy rules must be "consistent with" national rules, "[a] local rule that countermands a national rule is not consistent with it"). And because, when Congress enacted section 1396u-2(f), it was presumed to be familiar with the Seventh Circuit's interpretation of section 1396a(a)(37) in *Illinois Council on Long Term Care*, see *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1072 (2020); *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 355 (7th Cir. 2017), if Congress wanted to require MCOs to pay *all providers* "according to" the 30-day/90-day schedule contained in section 1396a(a)(37), it easily could have, and would have, said so. Thus, Plaintiff's assertion that "[a]n MCO could not pay a 'provider' 'consistent with' Section (37)(A)'s 'procedures' other than by applying the 30/90-day schedule" (Dkt 26 at 4) is wrong.

The point is reinforced by the materially different language that Congress used in section 1396n(b)(4), 42 U.S.C. § 1396n(b)(4), which applies to managed care programs under a CMS "waiver" of a state plan's requirements and long predated the separate managed care program under a CMS-approved state plan authorized by section 1396u-2. See 67 Fed. Reg. 40989–90 (describing waiver-based managed care programs authorized in 1981 by Pub. L. 97–35 § 2175(b)). Significantly, section 1396n(b)(4), unlike later-enacted section 1396u-2(f), allows such waivers if, among other things, "providers . . . are paid on a timely basis *in the same manner as health care practitioners must be paid under section 1396a(a)(37)(A)*." 42 U.S.C. § 1396n(b)(4) (emphasis added). This provision, enacted before section 1396u-2(f), shows that when Congress intends all "providers" to be paid under the 30-day/90-day schedule for "practitioners," it says precisely that — which it did not do in section 1396u-2(f). See *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018); see also *Jama*, 543 U.S. at 341; *Cabinet for Human Res. v. N. Ky. Welfare Rights Ass'n*, 954

F.2d 1179, 1184 (6th Cir. 1992) ("Congress . . . knows how to impose binding obligations on a state when it wishes to do so").

Nor does section 1396u-2(f)'s use of the term "provider," as opposed to the term "practitioner," support Plaintiff's interpretation of the section, as it maintains.  (Dkt. 26 at 3–4.) Section 1396u-2(f) requires that, unless an MCO and provider agree otherwise, all "providers" be paid on a "timely basis," and that this be "consistent with" section 1396a(a)(37), which prescribes a specific schedule — the 30-day/90-day schedule — only for "practitioners."  Thus, the general requirement that all "providers" be paid on a "timely basis" does not require that *all* providers be paid under the schedule applicable to "practitioners" set forth in section 1396a(a)(37).  Indeed, this very distinction is reflected in section 447.45(d) of CMS's regulations, which predate the enactment of section 1396u-2(f) and, establishing procedures for the "[t]imely processing of claims," separately prescribes the 30-day/90-day schedule for specified "practitioners," and a 12-month schedule for "all other claims," including claims by all other providers.  42 C.F.R. § 447.45(d); see also *Illinois Council on Long Term Care*, 957 F.2d at 306, 310.  Thus, "timely" payment is not limited to payment under the 30-day/90-day schedule.

For the same reason, there is no merit to Plaintiff's argument that "[i]f Section u-2(f) imposes no payment schedule for 'providers,'" the Department's interpretation renders "superfluous" its exception allowing an MCO and a provider to agree to a separate payment schedule.  (Dkt. 26 at 4–5.)  Section 1396u-2(f), like section 447.45, does impose a payment schedule for "providers" by requiring that they be paid "on a timely basis."  It is just not the same schedule for specified practitioners.[5]

---

[5]  It is fairly common, moreover, for statutes, court rules, and regulations, including Medicaid statutes and regulations (including the amendment to the Medicaid Act that added section 1396u-2(f)), to require that certain actions be done on a "timely" basis without prescribing an exact period of time to do them.  See, e.g., 42 U.S.C. § 1395ggg (b)(1)(B)(viii)(II), enacted by Pub. L. 105-33, § 4015, and since repealed; 42

Even if there were any doubt about section 1396u-2(f)'s meaning, it is resolved by CMS's regulation implementing it, section 447.46, which states that, subject to an alternate schedule agreed to between an MCO and a provider, "[a] contract with an MCO must provide that the organization will meet the requirements of § 447.45(d)(2) and (d)(3)." 42 C.F.R. § 447.46. And, as explained in *Illinois Council on Long Term Care*, 957 F.2d at 306, these specified provisions (§§ 447.45(d)(2) and (d)(3)), like section 1396a(a)(37), explicitly apply only to "practitioners," not "other providers," whose payments are instead governed by the 12-month payment deadline contained in § 447.45(d)(4). Accordingly, even if the text of section 1396u-2(f) were not clear that its 30-day/90-day schedule applies only to practitioners, not hospitals, this Court should defer to CMS's reasonable interpretation of the statutory provision set forth in its regulation. See, e.g., *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2124 (2016); *United States v. Mead Corp.*, 533 U.S. 218, 229–30 (2001).

Downplaying the actual text of section 447.46(c), Plaintiff quotes parts of the rulemaking commentary, including the preamble, for adoption of this regulation. (Dkt. 26 at 6–7.) But the actual text of section 447.46(c) as formally adopted — which makes clear that section 1396a(a)(37)'s 30-day/90-day schedule incorporated by section 1396u-2(f) applies only to

---

U.S.C. §1396b(g)(2) (requiring Secretary of HHS to conduct "timely sample onsite surveys" of institutions in which Medicaid recipients receive care); Fed. R. Civ. P. 24(a), (b) (requiring that request to intervene in federal proceedings be made "[o]n timely motion"); 28 U.S.C. § 157(d) (requiring that party seeking to withdraw a case from the bankruptcy court must proceed "on timely motion"); Fed. R. Civ. P. 23(c) (requiring court to determine whether to certify action as class action "at an early practicable time"). See also 42 U.S.C. § 1396a(a)(53)(A) (requiring that State Medicaid plan provide for notifying in a "timely manner" pregnant, breastfeeding, and postpartum women (and children under 5) who are eligible for benefits under special supplemental nutrition program); 42 U.S.C. § 1396r(i)(1)(A) (requiring Secretary of HHS to update "on a timely basis" information related to nursing homes); 42 U.S.C. § 1396r-8(c)(4)(C)(ii) (requiring Secretary of HHS to make publicly available "on a timely basis" information submitted to Congress relating to covered outpatient drugs that have been misclassified); 42 C.F.R. 438.14(b)(2)(iii) (requiring State contracts with MCOs (among others) which enroll Native Americans to demonstrate sufficient "Indian health care providers participating in provider network to ensure "timely access" to services); 42 C.F.R. 438.206(a) (requiring each State to ensure that all services under State plan be made available to enrollees of MCO (among others) in a "timely manner").

practitioners, not hospitals — controls over language in the preamble for its adoption. See *Wyo. Outdoor Council v. United States Forest Serv.*, 165 F.3d 43, 53 (D.C.Cir.1999) ("language in the preamble of a regulation is not controlling over the language of the regulation itself"). And if section 1396u-2(f) were ambiguous, deference must be given to that text of the regulation, not the regulation's preamble. See *Saint Francis Med. Ctr. v. Azar*, 894 F.3d 290, 296–97 (D.C. Cir. 2018); *Martin v. Soc. Sec. Admin.*, 903 F.3d 1154, 1162 (11th Cir. 2018); see also *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 273 (E.D.N.Y. 2007).[6]

Plaintiff also misplaces reliance on section 1396u-2(h)(2)(B), which, for MCOs that serve certain Native Americans, mandates that contracts with them require them "[t]o agree to make prompt payment (consistent with rule for prompt payment of providers under section 1396u-2(f) of this title) to Indian health care providers . . . ." 42 U.S.C. § 1396u-2(h)(2)(B). According to Plaintiff, this provision, adopted 12 years after section 1396u-2(f) (in 2009, by Pub. L. 111-5, § 5006), reflects an understanding that section 1396u-2(f)'s 30-day/90-day schedule applies to all "providers." (Dkt. 26 at 5.) Even if a later Congress's understanding of an enactment more than a decade earlier had any weight, Plaintiff is doubly wrong. *First*, this provision just requires payments "consistent with" section 1396u-2(f)'s payment rules for providers, which, as explained above, does not require that all providers be paid under the 30-day/90-day schedule that section 1396a(a)(37) mandates for specified practitioners. *Second*, CMS's regulation implementing this provision, unlike its regulation for section 1396u-2(f) (section 447.46), explicitly states that a State's contract with an MCO covering such services must require the MCO to "[m]ake payment to all [Indian health care providers] in its network in a timely manner

---

[6] Plaintiff also reads too much into the catchall term "provider" in the preamble to the final adoption of section 447.46, which simply implements the Administrative Procedure Act's requirement of a "concise general statement of [the rule's] basis and purpose," 5 U.S.C. § 553(c), without distinguishing, as the regulation itself does, between practitioners and other providers.

*as required for payments to practitioners in individual or group practices under 42 CFR 447.45 and 447.46.*" 42 C.F.R. § 438.14(b)(2)(iii). This shows that when a statute authorizes CMS to do so, and it intends to do so, it knows exactly how to require an MCO to pay all providers under the 30-day/90-day schedule applicable to practitioners under sections 1396a(a)(37), 447.45, and 447.46.

Finally, none of the district court decisions on which Plaintiff relies justifies a different understanding of what section 1396u-2(f) means regarding the default schedule for MCOs to pay hospitals. In *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 526–27 & nn.82–85 (E.D. Pa. 2011), the district court, after holding that section 1396u-2(f) does not create rights enforceable under section 1983, suggested in *dicta* that section 1396u-2(f), like section 1396n(b)(4), extends section 1396a(a)(37)'s payment schedule for specified practitioners to all Medicaid providers, including hospitals. But the court's conclusory observations about section 1396u-2(f) did not examine the meaning of its text or note the material differences between that text and the language of section 1396n(b)(4). That *dicta* therefore deserves no weight here.

In *Appalachian Regional Healthcare v. Coventry Health & Life Ins. Co.*, 970 F. Supp. 2d 687 (E.D. Ky. 2013), the court's comments about the meaning of section 1396u-2(f) were irrelevant to the case and reflected the court's fundamental misunderstanding of the nature of the State's managed care program, which was operated under a state plan "waiver" pursuant to section 1396n(b)(4), not a plan provision governed by section 1396u-2(f), *id.* at 699–700; see also *Appalachian Reg'l Healthcare v. Coventry Health & Life Ins. Co.*, No. 5:12-CV-114-KSF, 2012 WL 2359439, at *1 (E.D. Ky. June 20, 2012) (explaining that State operated managed care program under CMS waiver). Compounding this error in its analysis, the court simply assumed

that section 1396u-2(f) required the state Medicaid agency to do what the plaintiff providers claimed, without any discussion or meaningful examination of the statute's text to determine whether it makes state Medicaid agencies responsible for MCOs' payment obligations to Medicaid providers, or what payment schedule it adopts for hospitals, as opposed to doctors and other Medicaid practitioners. Thus, the court's statements about the meaning of section 1396u-2(f) have no persuasive value. The same is true for the district court's decision in *National Medical Care, Inc. v. Rullan*, No. CIV. 04-1812 (HL), 2005 WL 2878094 (D.P.R. Nov. 1, 2005), which *Appalachian Regional Healthcare* cited for its section 1983 ruling, 970 F. Supp. 2d at 698. In *National Medical Care*, the only issue decided by the court was whether sections 1396a(a)(37) and 1396u-2(f) create rights that a Medicaid provider can enforce under section 1983. 2005 WL 2878094, at *7-8. The court treated the two as equivalent without examining, or even mentioning, their different language, *id.* at *7–8 & n.18, and the case says nothing, or nothing meaningful, about the content of section 1396u-2(f) in terms of what duties it imposes on a state Medicaid agency, or what payment schedule it presumptively prescribes for MCOs.[7]

### 3.  Plaintiff Cannot Enforce Section 1396u-2(f) under Section 1983.

*Third*, Plaintiff has no claim under section 1983 because section 1396u-2(f) does not give providers an "unambiguously conferred right," using language that is "unmistakably clear," to have state Medicaid agencies ensure that MCOs unfailingly comply with the payment schedule Plaintiff advocates. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 286 (2002).

On this issue, the Court must distinguish between section 1396u-2(f) *as written by Congress* and section 1396u-2(f) as *rewritten by Plaintiff*. As noted above (at 3–7), section

---

[7]  That Illinois has adopted, as a matter of state law and policy, a 30-day deadline for all provider payments by MCOs (see Dkt. 24 at 7) does not mean, as Plaintiff contends, that the Department agrees with Plaintiff's interpretation of Sections 1396a(a)(37) or 1396u-2(f), even if that were relevant to how the Court should interpret them.

1396u-2(f), by its express terms, merely requires state Medicaid agencies to include in their contracts with MCOs a default schedule for the MCOs' payments to Medicaid providers, which each provider may renegotiate. Regardless of whether section 1396u-2(f) creates a right enforceable under section 1983 to have that default schedule included in the State-MCO contract, and whether any such right is enforceable by a Medicaid provider, there is no plausible argument that section 1396u-2(f) establishes "unambiguously conferred rights" under which States have significant additional duties *not* set forth in the statute's actual text and, as Plaintiff contends, "must ensure that MCOs pay . . . claims submitted by a medical provider" under the 30-day/90-day schedule Plaintiff advocates (Dkt. 9 at 4–5).[8] Under the test established in *Blessing v. Freestone*, 520 U.S. 329 (1997), and refined in *Gonzaga*, Plaintiff's claimed right to enforce this version of section 1396u-2(f) under section 1983 fails badly.

In particular, section 1396u-2(f), as Plaintiff interprets it, cannot be said to establish an "unambiguously conferred right," *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 820 (7th Cir. 2017) (quoting *Gonzaga*, 536 U.S. at 283), grounded in statutory text which "'unambiguously impose[s] a binding obligation'" that does not "leave any room for discretion on the part of the state," *id.* at 822 (quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)), and "is not so vague and amorphous that its enforcement would strain judicial competence," *id.* at 821. Because they are not in section 1396u-2(f)'s actual text, neither the "right" that Plaintiff claims to have, nor the "obligation" it says the statute imposes on the Department, can plausibly be said to be "unambiguous." See *United States v. Wells Fargo Bank*, 485 U.S. 351, 354 (1988) ("[E]xemptions from taxation are not to be implied; they must be unambiguously proved."). To the contrary, the only unambiguous obligation created by section 1396u-2(f) is the duty of a state

---

[8] Indeed, it is ironic that Plaintiff accuses the Department of "completely ignoring" the language of section 1396u-2(f) (Dkt. 26 at 11), when it is Plaintiff that has done so and attributed to the statute obligations it nowhere expresses.

Medicaid agency to include in its contracts with MCOs a default schedule for their payments to Medicaid providers. In sum, even if section 1396u-2(f) could plausibly be read to implicitly impose on States a further duty to force MCOs always to conform to that schedule, as Plaintiff claims, that further duty cannot possibly be characterized as unambiguous. Similarly, because the Medicaid Act explicitly allows a State, in its discretion, to sanction an MCO or even terminate its contract for violating its contractual obligations to the State, 42 U.S.C. § 1396u-2(e); see also 42 CFR §§ 438.708, 438.710, and further expressly authorizes CMS, in its discretion, to withhold funds to a State for its payments to an MCO that materially violates its obligations, 42 U.S.C. § 1396c; 42 C.F.R. § 430.35; see *Concilio De Salud Integral De Loiza, Inc. v. U.S. Dep't of Health & Human Servs.*, 538 F. Supp. 2d 139, 148 (D.D.C. 2008) (holding that HHS Secretary has discretion, not subject to private control, whether to withhold federal funding for a State not in compliance with its plan), it cannot be said that the limited language in section 1396u-2(f) on which Plaintiff relies establishes an "unambiguously conferred right" by Medicaid providers to have States prevent MCOs from ever failing to comply with the default payment schedule to which they must agree in their contracts with States. And the fact that such an implied obligation and right would benefit providers fails to satisfy this strict standard. See *McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005) ("Rights" differ from "broader or vaguer 'benefits' or 'interests' that some statutes create.") (citing *Gonzaga*, 536 U.S. at 283).

In addition, Plaintiff's version of section 1396u-2(f) implies a vague and amorphous obligation whose enforcement would strain judicial competence. Indeed, apart from describing the result to be achieved, it is telling that Plaintiff has never explained the means by which the Department supposedly could fulfill this obligation, or how a court would enforce it. Federal law prohibits a State (with minor exceptions not relevant here) from paying Medicaid providers

in a managed care program for medical services to persons enrolled with an MCO.  42 C.F.R.

§ 438.60.  And, according to Plaintiff, it is not enough for a Medicaid provider to be able to

enforce its contract directly against an MCO, under state law, if an MCO breaches the contract's

payment schedule.  Instead, Plaintiff insists, section 1396u-2(f) imposes on state Medicaid

agencies a duty to prevent such a breach from ever occurring.  But that alleged duty would

require a state Medicaid agency to create a duplicate accounting system for every MCO and

monitor all of its claim and payment information, including information sufficient to determine

itself whether provider claims are "clean" (e.g., for services that are medically necessary, with

any required prior authorization, and correctly coded with all relevant data), how much is owed

under the provider's contract, and when it is owed.  That is absurd, especially because the

purpose of a managed care program under section 1396u-2 is to have MCOs assume the day-to-

day functions previously performed by States under a traditional fee-for-service model.[9]  And it

is entirely unclear just how a State could actually prevent an MCO from ever failing to comply

with the applicable payment schedule for a specific provider, or for all providers generally.  That

is especially true because the Medicaid Act does not allow a State to peremptorily terminate an

MCO's contract for noncompliance with its obligations.  42 U.S.C. § 1396u-2(e)(4)(B).  For

similar reasons, it is equally unclear how a court would enforce this supposed obligation.  See

*Heckler*, 470 U.S. at, 831 ("recognition of the existence of discretion is attributable in no small

part to the general unsuitability for judicial review of agency decisions to refuse enforcement").

Doing so would either require the court itself to become immersed in the minutia of provider

claim information, or to adopt the unreasonable stance of accepting either the MCO's or the

---

[9]   Simply monitoring an MCO's payment aging information for all of the providers in its network
collectively would not achieve what Plaintiff demands because it would require a State to accept the
validity of the MCO's characterization of whether a claim was clean and payable, at what amount, and
when, and it would fail to account for separately negotiated payment schedules with individual providers,
which Plaintiff says a State must do.  (Dkt. 26 at 14–15.)

provider's position on what is payable and when. For this reason as well, the Court should reject Plaintiff's contention that its interpretation of section 1396u-2(f) can be enforced against a State under section 1983.

If that were not enough, Medicaid providers are not the intended beneficiaries of section 1396u-2(f), but rather incidental beneficiaries of Congress's desire to facilitate the provision of medical care to individuals entitled to it — the intended beneficiaries of the Medicaid Act — by protecting against the danger that providers would refuse to provide such care. The primary purpose of the Medicaid Act is to provide medical assistance to these eligible individuals, and statutory provisions that indirectly support that purpose by requiring an adequate network of providers, and payments to them, are typically considered to create only incidental benefits for providers, not statutory rights that providers may enforce under section 1983. See *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1387–88 (2015) (plurality) ("We doubt . . . that providers are intended beneficiaries (as opposed to mere incidental beneficiaries) of the Medicaid agreement, which was concluded for the benefit of the infirm whom the providers were to serve . . . ."); *C.S. Sewell*, 2018 WL 6591429, at *6 (surveying cases); see also *Westside Mothers v. Olszewski*, 454 F.3d 532, 542–43 (6th Cir. 2006) ("The only reference [in § 1396a(a)(30)(A)] to Medicaid providers is as indirect beneficiaries 'enlisted' as subordinate partners in the administration of Medicaid services."). That reasoning applies to section 1396u-2(f). *Medevac MidAtlantic*, 817 F. Supp. 2d at 530 ("[D]irect payment to providers . . . help[s] effectuate the parties' intent *to implement a Medicaid managed care program* for the benefit of eligible Medicaid recipients. Medevac is thus an incidental, not intended, beneficiary."); see also *Long Term Care Pharmacy All. v. Ferguson*, 362 F.3d 50, 57–58 (1st Cir. 2004); *Walgreen Co. v. Hood*, 275 F.3d 475, 478 (5th Cir. 2001); *C.S. Sewell*, 2018 WL 6591429, at *5–6. Even

Plaintiff recognizes that this was Congress's goal in enacting section 1396a(a)(37), which section 1396u-2(f) partly incorporates. (Dkt. 26 at 15: "Section 37(A)'s prompt payment rule encourages individual doctors to serve Medicaid patients.").

In addition, the text of section 1396a(a)(37), adopted in part for section 1396u-2(f)'s timely payment standard, does not state that its payment benchmarks must be satisfied on a provider-by-provider basis, as opposed to being met in the aggregate for all providers in an MCO's network. See 42 U.S.C. §§ 1396a(a)(37) and 1396u-2(f).[10] Again, therefore, section 1396u-2(f) fails to reflect a Congressional intent to create individual rights to the benefit of providers.

The Seventh Circuit's decision in *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815 (7th Cir. 2017), on which Plaintiff relies (Dkt. 26 at 12–13), dealt with a statute whose terms are plainly distinguishable, and thus it does not support Plaintiff's position about section 1396u-2(f). The statute at issue in *BT Bourbonnais Care*, section 1396a(a)(13), explicitly requires States to "provide . . . for a public process for determination of rates of payment" to certain Medicaid providers "under which . . . *providers* . . . are given a reasonable opportunity for review and comment on the proposed rates . . . ." 42 U.S.C. § 1396a(a)(13) (emphasis added). That express language, the court held, gives providers a clear procedural right, enforceable under section 1983, to participate in this public rate-setting process, because they are the directly intended

---

[10]  Section 1396u-2(f)'s allowance for individually agreed payment schedules is not inconsistent with having a State generally measure an MCO's compliance with the section's default payment schedule on an aggregate basis for all of its Medicaid providers, as Plaintiff maintains. Under a managed care program, a State cannot efficiently monitor MCO payments to each provider, nor should it do so. And if a State believes that an MCO is not meeting the payment schedule in its state contract, an MCO can always show that any departure from that schedule results from following different schedules for particular providers. Moreover, as 42 C.F.R. § 438.14(b)(2)(iii) shows, requiring payment to *all* providers under a specific schedule is readily mandated by suitable language. And the theoretical possibility of discriminatory payment delays for some providers, which Plaintiff invokes, is illusory as a practical matter because it would require additional claims processing procedures by MCOs, who have no incentive to adopt them.

beneficiaries of the statute, and it does not just set an aggregate plan requirement, but establishes an individual procedural right that is not "so vague and amorphous" that enforcing it "would strain judicial competence." 866 F.3d at 821–22. Given these distinct features of section 1396a(a)(13), *BT Bourbonnais Care* does not support a similar conclusion for section 1396u-2(f).

Nor do the district courts' decisions in *Appalachian Regional Healthcare* and *National Medical Care* support Plaintiff's position, as it claims.[11] As noted above (at 13–14), *Appalachian Regional Healthcare* involved a waiver-based managed care program under Section 1396n(b)(4), 970 F. Supp. 2d at 920, for which provider payments are governed by that section, not section 1396u-2(f), making its discussion of section 1396u-2(f) not only irrelevant, but inexplicable. See also *Appalachian Reg'l Healthcare v. Coventry Health & Life Ins. Co.*, No. 5:12-CV-114-KSF, 2012 WL 2359439, at *1 (E.D. Ky. June 20, 2012) (explaining that State operated managed care program under CMS waiver). In addition, the court wrongly treated a State's obligations under section 1396a(a)(37) and section 1396u-2(f) as the same, thus failing to distinguish between a State's *own* payment obligations in a fee-for-service arrangement and its distinct obligations under a managed care arrangement, in which payments to providers are made *by MCOs*, and a State's only express duty under section 1396u-2(f) is to bind MCOs by contract to pay providers in a timely manner consistent with section 1396a(a)(37), unless they agree otherwise. Indeed, the court, in treating the claimed right against a State under section 1396u-

---

[11] Plaintiff largely ignores the other cases, such as *Bio-Medical Applications of North Carolina, Inc. v. Electronic Data Systems Corp.*, 412 F. Supp. 2d 549 (E.D. N.C. 2006), and *Patients' Choice Medical Center of Humphries County, LLC v. Office of the Governor*, No. 3:08-cv-696-WHB-LRA, 2009 WL 531861 (S.D. Miss. Mar. 3, 2009), holding that section 1396a(a)(37)(A) does not create rights enforceable under section 1983. Plaintiff purports to distinguish them by saying that it "is not seeking directly to enforce Section 37(A) . . . ." (Dkt. 26 at n.19.) But Plaintiff insists that section 1396u-2(f) creates individual rights in providers because it incorporates section 1396a(a)(37), which, unlike section 1396u-2(f), addresses payments to certain healthcare practitioners *directly* by a State itself, not by MCOs.

2(f) as clear and readily enforced, failed to acknowledge that it is an MCO, not the State, that must pay providers, and correspondingly failed to recognize the difficulties in how a State is supposed to prevent MCOs from failing to comply with section 1396u-2(f)'s payment schedule, and in how a court is supposed to compel a State to do that. 970 F. Supp. 2d at 699. The court in *National Medical Care* similarly treated section 1396u-2(f) as imposing on a State obligations that are substantively identical to those under section 1396a(a)(37), despite the key differences in their language and the contexts in which they apply. 2005 WL 2878094, at *7–8 & n.18. The court compounded this error by also treating section 1396a(a)(37) and section 1396a(bb)(5) as materially equivalent, despite the clear differences between them, and following *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 75 (1st Cir. 2005), which held that section 1396a(bb)(5) is enforceable under section 1983. 2005 WL 2878094, at *8.[12]

## C.    Section 1396a(a)(8)

Section 1396a(a)(8) of the Medicaid Act, which states that a State's Medicaid plan must provide that "medical assistance under the plan . . . shall be furnished with reasonable promptness to all eligible *individuals*," 42 U.S.C. § 1396a(a)(8) (emphasis added), likewise does not support Plaintiff's contentions that the Department must force MCOs to pay Medicaid *providers* under the 30-day/90-day schedule that Plaintiff advocates, and that providers have a right to enforce this duty under section 1983. When Congress wants to impose a specific schedule to pay certain Medicaid providers, it knows how to do so, as it did in sections

---

[12] For similar reasons, Plaintiff's claim under Section 1396b(m)(2)(A)(xii) fails even more obviously. That section provides that "no payment shall be made . . . to a State with respect to expenditures incurred by it for payment . . . for services provided by [an MCO under its contract with a State] unless . . . such contract, and the entity complies with the applicable requirements of section 1396u-2 of this title." 42 U.S.C. § 1396b(m)(2)(A)(xii). This section, by its terms, imposes a duty only on the federal government, not on States. And even that "duty" is discretionary, and thus beyond private control in a section 1983 action. See *Concilio De Salud Integral De Loiza*, 538 F. Supp. 2d at 148.

1396a(a)(37) and 1396n(b)(4). See, e.g., *Rotkiske*, 140 S. Ct. at 361. Thus, section 1396a(a)(8) — which refers to furnishing medical assistance to "eligible individuals" with "reasonable promptness" — cannot plausibly be read to mandate a specific schedule. In *Illinois Council on Long Term Care*, the Seventh Circuit rejected a similar claim based on Section 1396a(a)(13)(A), stating: "Section 1396a(a)(37)(A) shows that when Congress wanted to impose time limits for the payment of certain Medicaid claims, it did so explicitly." 957 F.2d at 308. See also *Lockheed Corp. v. Spink*, 517 U.S. 882, 897 (1996) ("When Congress includes a provision that specifically addresses the temporal effect of a statute, that provision trumps any general inferences that might be drawn from the substantive provisions of the statute."); *Blinder, Robinson & Co. v. S.E.C.*, 837 F.2d 1099, 1113 (D.C. Cir. 1988) ("The statute itself indicates that Congress full well knows how to express a time restriction . . . ."). For the same reason, section 1396a(a)(8) cannot be given the meaning Plaintiff attributes to it, mandating a specific deadline for MCO payments to providers.[13]

Nor can section 1396a(a)(8) reasonably be read to create rights for specific providers, as

---

[13] Relying on *Doctors Nursing & Rehabilitation Center, LLC v. Norwood*, No. 1:16-CV-10255, 2017 WL 3838031 (N.D. Ill. Sept. 1, 2017), which was decided in the context of a motion for a preliminary injunction, Plaintiff maintains that section 1396a(a)(8)'s reasonable promptness requirement for providing medical assistance to individuals incorporates the 30-day/90-day schedule that it says section 1396u-2(f) and section 447.46 adopt for payment to non-practitioner providers. (Dkt 26 at 10.) Even if this contention were sound, it means that Plaintiff's claim under section 1396a(a)(8) is no better than, and adds nothing to, its claim under section 1396u-2(f), which lacks merit for the reasons discussed above. In addition, *Doctors Nursing*'s assumption that section 1396a(a)(8) creates an *independent* duty to pay providers, even by incorporating the terms of other statutory provisions, is highly doubtful. See *Illinois Council on Long Term Care*, 957 F.2d at 308; see also *Crane v. Shewry*, No. 2:07-cv-01639-GEB-JEM, 2007 WL 2409665, at *2 (E.D. Cal. Aug. 21, 2007) (holding that section 1396a(a)(37), not section 1396a(a)(8), governs schedule for payments to providers, and rejecting provider's claim under section 1396a(a)(8) "because it addresses providing services to individual beneficiaries, not to [defendant's] reimbursing claims submitted by providers"). Moreover, *Doctors Nursing*, under this doubtful assumption, held that "a violation of section 1396a(a)(8)'s reasonable promptness requirements may be shown when an application for Medicaid or long-term care eligibility has been pending for more than ninety days or *when a claim for payment for medical assistance goes unpaid for more than twelve months*." 2017 WL 3838031, at *6 (emphasis added). Plaintiff's extrapolation of this to conclude that section 1396a(a)(8) requires a faster payment schedule for MCO payments to providers is neither logically mandated by *Doctors Nursing* nor even plausible.

opposed to individuals eligible for Medicaid assistance, that they may enforce under section 1983. Section 1396a(a)(8) speaks directly to benefits to "individuals" receiving Medicaid services, and it is clear, for section 1983 purposes, that they, not providers, are the only persons who could be deemed the target beneficiaries of section 1396a(a)(8) able to enforce it. It is significant, therefore, that although the cases are divided over whether section 1396a(a)(8) creates rights in individual Medicaid patients that are enforceable under section 1983, no case has ever found that section 1396a(a)(8) is enforceable by a Medicaid provider. (See Dkt. 24 at 22-23.)

## II.   The Eleventh Amendment Bars Plaintiff's Claims.

Plaintiff concedes, as it must, that the Eleventh Amendment prevents the Court from granting much of the relief sought in its complaint, including enforcement of state law and ordering the Department to pay amounts Plaintiff says are due from the MCOs. (Dkt. 26 at 26-27.) But the other relief Plaintiff seeks, including judicial control of the Department's discretionary decisions about what actions to take if an MCO violates its obligations, is also barred by the Eleventh Amendment. Perhaps, if the Department had *no discretion* at all, and instead had a statutory duty, enforceable under section 1983, to ensure *perfect compliance* by MCOs with the 30-day/90-day payment schedule that Plaintiff advocates, the Eleventh Amendment would not prevent the court from enforcing that duty, consistent with the limits of *Ex parte Young*, 209 U.S. 123 (1908). But if any duty by the Department to act against the MCOs that fail to meet the payment schedule prescribed by section 1396u-2(f) is subject to the Department's discretion regarding what level of MCO noncompliance warrants action, the Eleventh Amendment precludes the court from interfering with that discretion. See *Ex Parte Young*, 209 U.S. at 158 ("There is no doubt that the court cannot control the exercise of the

discretion of an officer. It can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in its nature, refuses or neglects to take such action."); *Seminole Tribe of Fla. v. State of Fla.*, 11 F.3d 1016, 1028-29 (11th Cir. 1994), *aff'd sub nom. Seminole Tribe of Fla v. Fla.*, 517 U.S. 44 (1996). And, as described above, the Medicaid Act and regulations plainly give the Department such discretion (which the Department maintains is an aspect of its rights, not any duty). For this reason, too, Plaintiff's claims against the Department lack merit.

**Conclusion**

For the foregoing reasons and those set forth in the Department's memorandum in support of its motion to dismiss, that motion should be granted and this action should be dismissed with prejudice.

Respectfully submitted,

KWAME RAOUL
*Attorney General*
*State of Illinois*

By:    */s/ Sunil Bhave*_____
       Sunil Bhave
       Richard S. Huszagh
       Jason Kanter
       Assistant Attorneys General
       Office of the Attorney General
       100 W. Randolph Street, 13th Floor
       Chicago, IL 60601
       Phone: (312) 814-2098
       sbhave@atg.state.il.us

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on August 4, 2020, a copy of the foregoing was served via CM/ECF on all parties of record.

*/s/ Sunil Bhave*_____
Assistant Attorney General