IN THE UNITED STATES DISTRICT COURT
OF THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAINT ANTHONY HOSPITAL | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 1:20-cv-02561 |
| THERESA EAGLESON, in her official capacity as Director of the Illinois Department of Healthcare and Family Services | ) ) Honorable Steven C. Seeger ) ) ) ) |
| Defendant. | ) ) |

**JOINT MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Intervenors Meridian Health Plan of Illinois, Inc. ("Meridian"), Blue Cross and Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company ("BCBSIL"), and IlliniCare Health Plan ("IlliniCare") (collectively, the "MCOs") hereby move to compel arbitration of the disputes set forth by Plaintiff Saint Anthony Hospital ("SAH") in its Amended Complaint against Defendant Theresa Eagleson, in her capacity as Director of the Department of Healthcare and Family Services ("HFS") for the State of Illinois (the "State"). In support of this Motion, the MCOs state as follows.

### I. INTRODUCTION.

This action is an attempt by SAH to make an end run around its obligations under the contracts it entered into with the MCOs, which include mandatory arbitration provisions. The MCOs are three of the managed care organizations which contracted with HFS to enroll Medicaid beneficiaries as health plan members. (*See* ECF No. 131, ¶¶ 29–33.) The MCOs entered into provider agreements with SAH (the "Provider Contracts"), which govern and control the MCOs' obligations to pay SAH for services rendered. The Provider Contracts broadly concern all aspects

of the MCOs' payment obligations to SAH, including the timing and manner in which the MCOs must process and pay claims. The Provider Contracts also include arbitration provisions that apply to all disputes arising out of these agreements, including any disputes related to claims payments.

SAH alleges that the MCOs "have systematically delayed and denied claims without justification, failed to pay undisputed claims, and when payments are made, they refuse to provide the detail necessary for SAH to determine if it is receiving proper payment or, if not, why not." (*Id*. ¶ 6.) Despite these contentions, SAH did not demand from the MCOs either payment or mandatory arbitration under the Provider Contracts. Instead, SAH filed its Amended Complaint against HFS, claiming it "has no other recourse than this Court" and that the MCOs, and thereby HFS, have violated federal law. (*Id*. ¶ 104.) SAH asks this Court to require the State to compel the MCOs to pay amounts allegedly past due for claims submitted under the Provider Contracts and to change their remittances to include detailed payment calculations. (*See id*. ¶¶ 122, 131.)

There is, however, a prescribed remedy for any purported wrongdoing: arbitration. SAH just chose not to use it, even though SAH does not dispute that the arbitration provisions in the Provider Contracts are valid and enforceable. Additionally, SAH neither mentions nor attaches the Provider Contracts, making it impossible for the Court to determine what amounts of money, if any, are actually due to SAH and when, as well as the agreed format for payments. It is clear that all of the issues in the Amended Complaint directly or indirectly pertain to SAH's disputes with the MCOs. *See Saint Anthony Hosp. v. Eagleson*, 40 F.4th 492, 519 (7th Cir. 2022) (the "factual issues related to the MCOs appear intertwined with Saint Anthony's claim against HFS"). Accordingly, these disputes must be resolved in binding arbitration—an issue on which the Seventh Circuit expressly did not rule—and this Court should stay this entire action pending the completion of arbitration.

## II. BACKGROUND.

### A. The Parties' Contracts.

#### 1. *Medicaid Contracts & Background Law.*

Pursuant to their Medicaid contracts with the State and federal government, the MCOs administer government-sponsored healthcare plans for the low-income individuals who are Medicaid members and enrolled in their respective health plans. (ECF No. 131, ¶¶ 20–33.) Under this managed-care arrangement, the State pays each MCO a capitated rate on a per-member, per-month basis; the MCOs contract with healthcare providers (like SAH); and the MCOs pay the providers for Medicaid-eligible costs incurred by their members pursuant to the terms of those contracts. (*E.g., id.* ¶ 24.) The MCOs' payment obligations are subject to certain state and federal laws, with an important exception—statutory provisions for timely payment apply "unless the health care provider and the organization agree to an alternate payment schedule," and the "MCO and its providers may, by mutual agreement, establish an alternative payment schedule." *See* 42 U.S.C. § 1396u-2(f); 42 C.F.R. § 447.46.

#### 2. *The Provider Contracts.*

While they follow State requirements for claims payments, the MCOs also entered into separate Provider Contracts with SAH. These contracts require: (1) SAH to provide authorized, covered medical services to the MCOs' members and to submit timely claims for payment in a prescribed manner; and (2) the MCOs to process, adjust, pay or deny the claims in compliance with specified timeframes and other requirements. (*See* ECF No. 28-1; ECF No. 34-1; ECF No. 41-2.) Importantly, the Provider Contracts also contain mandatory arbitration provisions that require SAH to submit any dispute arising out of them to binding arbitration. (ECF No. 78-1, Ex. A, §§ 4.9, 6.1–6.2; ECF No. 79, Ex. 1-A, § XIII; ECF No. 83, 3–4 (quoting §§ 9.1–9.2).)

3

a. Meridian's Provider Contract.

Under the "Payment for Services" and "Dispute Resolution" sections of Meridian's Provider Contract with SAH, a contract which has been in effect since October 1, 2014,[1] the parties must "make a good faith effort to negotiate and resolve all billing disputes." (ECF No. 78-1, ¶¶ 2–4; *id.* at Ex. A, §§ 4.9, 6.1.) If this negotiation "fails[s] to resolve the dispute, either party may request mediation," but mediation is required only if both parties agree to it. (*Id.* § 6.2.1.) Here, Meridian has chosen not to pursue mediation of the parties' disputes. Under these circumstances, the parties' disputes must be submitted to binding arbitration:

> *If Parties do not mediate* or mediation does not resolve the dispute within sixty (60) days of the request for mediation, *either party may seek binding arbitration* either under the Rules for Arbitration of the Alternative Dispute Resolution Service of the American Health Lawyers Association or the American Arbitration Association. *Both Parties agree to binding arbitration.*

(*Id.* § 6.2 (emphasis added).)

b. BCBSIL's Provider Contract.

Under the "Disputes" section of BCBSIL's Provider Contract with SAH, a contract which has been in effect at all times relevant to the allegations in the Amended Complaint, the parties must resolve any dispute relating to the Provider Contract in accordance with certain alternative dispute resolution procedures "instead of litigation":

> In order to avoid the cost and time consuming nature of litigation, *any dispute* between Plan and Contracting Provider *arising out of, relating to, involving the interpretation of, or in any other way pertaining to this Agreement . . . shall be resolved using the alternative disputes resolution procedures described in this Section instead of litigation.*

---

[1] Meridian and Saint Anthony entered into related practitioner agreements, which were also effective October 1, 2014. To the extent applicable, those agreements also control billing and payment disputes and include an arbitration provision. (*See generally* ECF No. 78-1, ¶¶ 2–4; *id.* at Exs. B–C.)

4

(ECF No. 41-3, Ex. 1, ¶¶ 6–7; *id.* at Ex. 1, Ex. A, § XIII(2) (emphasis added).) Under these procedures, if a dispute arises between the parties, either party must "give written notice to the other of the existence of a dispute." (*Id.* at Ex. 1, Ex. A, § XIII(2)(A)(1).) Afterwards, the parties may meet by mutual agreement to attempt to resolve the dispute, but, if that fails, they must "submit the dispute to a confidential mediation before JAMS." (*Id.* §§ XIII(2)(A)(2)–(3).) If the meeting and/or mediation is not successful in resolving the dispute, then the parties are required to "submit the dispute to final, binding and confidential arbitration [with] JAMS." (*Id.* § XIII(2)(B); *see also id.* § XIII(2).)

c. IlliniCare's Provider Contract.

Under IlliniCare's Provider Contract with SAH, which has been in effect since November 15, 2013, the parties must resolve any dispute relating to the Provider Contract in accordance with specified alternative dispute resolution procedures. (ECF No. 83, 3–4.) The parties must first attempt to resolve any disputes in accordance with the processes in IlliniCare's Provider Manual; if that is not successful, the parties may attempt to settle the dispute "through good faith negotiations"; but, if that too fails, the parties must submit any dispute to binding arbitration:

> If a Dispute it not resolved in accordance with the Informal Dispute Resolution section of this Agreement, *either party wishing to pursue the Dispute shall submit it to binding arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association* . . . .

(*Id.* (emphasis added); *see also id.* at Exs. A (the Provider Contract), B (the Provider Manual).)

**B. Procedural History.**

1. *SAH Initiates This Action, And The MCOs Pursue Arbitration.*

On April 27, 2020, SAH filed its original complaint, which alleged that the State had violated the Medicaid Act by failing to ensure that the MCOs "ma[d]e timely and accurate payment

5

for Medicaid services." (*See generally* ECF No. 1, ¶¶ 1, 6, 38, 43–57, 60–61, 72.) These disputes directly relate to the Provider Contracts, so, in June 2020, the MCOs moved to intervene in order to compel arbitration. (ECF No. 28; ECF No. 34; ECF No. 41.) On July 14, 2020, the Court held that the MCOs were entitled to intervene as of right "for the limited purpose of filing motions to compel arbitration," and the MCOs promptly moved to compel arbitration and stay the action insofar as it concerned them. (ECF No. 75; ECF No. 78; ECF No. 79; ECF No. 83; ECF No. 93.)

In the meantime, on June 16, 2020, Meridian filed an Arbitration Demand against SAH with the American Arbitration Association ("AAA"). (ECF No. 28-6.) In it, Meridian demanded arbitration with respect to all matters in dispute under its Provider Contract, including the disputes SAH raised in its original complaint. (*See generally id.*) This arbitration is currently stayed at SAH's request. (ECF No. 96; ECF No. 97.)

On May 15, 2020, HFS moved to dismiss SAH's original complaint for failure to state a claim, and on January 26, 2021, SAH moved to amend its complaint. (*E.g.*, ECF No. 16.) On July 9, 2021, the Court: (1) granted HFS' motion to dismiss on the grounds that the Medicaid Act does not create a private right of action enforceable under Section 1983; and (2) therefore denied the MCOs' motions to compel arbitration as moot. (ECF No. 107; ECF No. 108; ECF No. 109.) Then, on July 13, 2021, the Court denied as futile SAH's request to amend its complaint. (ECF No. 109.)

    2. *The Seventh Circuit Appeal.*

On July 19, 2021, SAH appealed. (ECF No. 112.) The MCOs did not appeal and never asked the Seventh Circuit to compel arbitration or to stay this case pending arbitration. The MCOs did, however, join the appeal to ask for an affirmance and supplement the State's brief by explaining: (1) that SAH's demands ultimately target the MCOs; and (2) that arbitration is therefore the proper route forward.

On July 5, 2022, a divided Seventh Circuit panel: (1) reversed the dismissal of Count I of the complaint; (2) affirmed the dismissal of Count II; and (3) reversed "the denial of Saint Anthony's motion to supplement." *Saint Anthony Hosp.*, 40 F.4th at 519. With respect to arbitration, the Seventh Circuit recognized that the "[a]rbitration provisions in [the Provider Contracts] would likely require arbitration" and that "requiring the district court to adjudicate issues at the claim-by-claim level, would strain judicial resources and seem to conflict with the arbitration clauses in the contracts between the MCOs and Saint Anthony." *Id.* at 501, 511–12. The Seventh Circuit ultimately declined to stay the proceedings, but it also recognized that SAH's claims require the resolution of factual disputes with the MCOs and emphasized that it was not addressing the merits of the MCOs' motions to compel arbitration. *See id.* at 519. The Seventh Circuit later denied rehearing. *Saint Anthony Hosp. v. Eagleson*, 48 F.4th 737, 737 (7th Cir. 2022).

The bottom line is that the MCOs' motions to compel were not before the Seventh Circuit. The Seventh Circuit merely declined *sua sponte* to enter a stay and instead remanded the matter for further proceedings. The issue of arbitration therefore remains open and unresolved.

    3. *The Amended Complaint.*

After this appeal concluded, the Court granted SAH leave to file an amended complaint, and, on October 27, 2022, SAH filed its Amended Complaint, which adds a Due Process claim to the original complaint. (*See generally* ECF No. 125; ECF No. 131.) In its Amended Complaint, SAH alleges that HFS violated federal law by failing to ensure that the MCOs "make transparent, timely, and accurate payment for Medicaid services." (*E.g.*, ECF No. 131, ¶¶ 1, 6, 8, 25–26, 28, 40–41, 63–92.) To support that premise, SAH disputes both the amounts of the payments it received from the MCOs and the manner in which it received them. In particular, SAH alleges that the MCOs have improperly: (1) denied claim payments; (2) imposed administrative burdens

7

on providers in processing and paying claims; (3) lacked transparency when making claim payments; and (4) delayed claim payments. (*Id.* ¶¶ 63–68 (claim denials), 69–70 (administrative burdens), 71–86 (transparency), 87–92 (payment delays).)

SAH asks this Court to grant it declaratory and injunctive relief for: (1) the alleged violation of the Fourteenth Amendment's Due Process Clause through the alleged failure of the MCOs to provide sufficiently transparent claims payment remittances (Count I); and (2) the alleged violation of the Medicaid Act's timely payment requirements through the MCOs' purported payment problems (Count II). (*Id.* ¶¶ 105–131.) Notably, SAH asks the Court to enter injunctions requiring the State to "use all available means" to cause the MCOs to use a particular format when issuing payment remittances and to make certain claim payments to SAH. (*Id.* ¶¶ 122, 131.)

### III. LEGAL STANDARD.

The FAA governs this matter. In enacting the FAA, Congress used "its powers to regulate interstate commerce to its fullest extent"; the FAA therefore "applies to all contracts involving interstate commerce." *J&JB Timberlands, LLC v. Woolsey Energy II, LLC*, No. 14-CV-1318-SMY-RJD, 2017 WL 396174, at *2 (S.D. Ill. Jan. 30, 2017) (citation omitted); *Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 544 n.2 (5th Cir. 2016) (citation omitted); *Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014). In applying this rule, courts broadly construe the "interstate commerce" requirement to apply to any contract affecting interstate commerce. *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) (citation omitted).

Here, the interstate commerce requirement is satisfied because: (1) the parties' disputes concern (a) the amounts allegedly owed for services provided by SAH to the MCOs' Medicaid members, and (b) the remittances accompanying the MCOs' payment for such services; and (2) the MCOs receive federal funding to pay for the services provided to their Medicaid members.

8

*See THI of New Mexico at Hobbs Ctr., LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1184 (D.N.M. 2012) (finding the FAA's interstate commerce requirement is met where the plaintiff received federal funding from the Medicaid program), *aff'd*, 532 F. App'x 813 (10th Cir. 2013); *Fosler v. Midwest Care Ctr. II, Inc.*, 928 N.E.2d 1, 14–15 (Ill. App. Ct. 2009) (finding the FAA applied where a facility received Medicaid funding).

The FAA eliminates district court discretion and requires the Court "rigorously" to enforce the arbitration of issues covered by arbitration agreements. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation omitted); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citations omitted); *Saxon v. Sw. Airlines Co.*, 993 F.3d 492, 495 (7th Cir. 2021) (discussing the liberal federal policy favoring arbitration) (citations omitted). Specifically, upon a showing that a party has failed to comply with a valid arbitration agreement, Section 4 of the FAA requires the Court to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Section 3, in turn, requires the Court to stay an action "upon being satisfied" that an issue in the action is "referable to arbitration." 9 U.S.C. § 3. Both provisions apply here. As detailed below, all of the parties' disputes are covered by the valid, enforceable and mandatory arbitration provisions in the Provider Contracts.

### IV. ARGUMENT.

For the following reasons, the Court should: (A) compel arbitration of SAH's disputes with the MCOs pursuant to Section 4 of the FAA; and (B) stay this action pursuant to Section 3 of the FAA and the discretionary factors required by the Seventh Circuit.

#### A. The Court Should Compel Arbitration.

In the Seventh Circuit, "[t]o compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the

9

opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). All three elements are satisfied here.

### 1. *The Parties Have Valid Agreements To Arbitrate Their Disputes.*

As detailed above in Section II.A.2, each moving MCO's Provider Contract contains a dispute resolution provision requiring the arbitration of disputes between that MCO and SAH. SAH has not contested the validity of these provisions. (*See generally* ECF No. 131.) The first requirement to compel arbitration is therefore satisfied.

### 2. *The Parties' Disputes Fall Within The Scope Of The Arbitration Provisions.*

When deciding whether a dispute is arbitrable, the Court should focus on the factual allegations in the Amended Complaint, and not the legal claims. *See Double Sunrise v. Morrison Mgmt.*, 149 F. Supp. 2d 1039, 1043 (N.D. Ill. 2001). Moreover, "[w]hether a particular claim is arbitrable depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1036 (7th Cir. 2012). Here, while SAH has the burden to show that the disputes alleged in its Amended Complaint are outside the scope of the valid arbitration provisions in the Provider Contracts, the core disputes asserted by SAH—that the MCOs have failed to pay for claims in a timely and appropriate manner and have not provided necessary transparency in their claim payment remittances—plainly fall within the scope of the parties' arbitration provisions.

As explained in Section II.A.2, the Provider Contracts govern in detail the parties' entire claims submission and payment processes, including claim payments, denials, rejections and adjustments, and related timing requirements. (*See generally* ECF No. 28-1 (Meridian's Provider Contract); ECF No. 37-2 (IlliniCare's Provider Contract); ECF No. 41-2 (BCBSIL's Provider Contract).) Moreover, subject to certain inapplicable exceptions, the mandatory arbitration

10

provisions in the Provider Contracts apply broadly to any and all disputes between the parties involving these contracts.[2]

Here, the Amended Complaint raises numerous disputes between SAH and the MCOs that SAH cannot in good faith contend fall outside the coverage of these arbitration provisions, including the following examples:

- **Lack of Transparency.** SAH alleges that "[t]he MCOs do not provide notice to Saint Anthony if or when they do or do not pay the HAP Claims Payment Increases and Other Add-On Payments on a claim. The remittance forms that the MCOs provide to Saint Anthony for paid claims do not state whether the payment includes any HAP Claims Payment Increases or Other Add-On Payments." (ECF No. 131, ¶ 110.) Additionally, SAH characterizes its transparency request as asking "that the calculations and variables used by the MCOs to determine payment amount be included in payment remittances" so that "Saint Anthony can[] know whether and how much the MCOs have underpaid it." (*Id.* ¶ 114.) This dispute regarding what the MCOs disclose to SAH when they make claims payments is a dispute arising out of and relating to the Provider Contracts. What the MCOs are telling Saint Anthony about those payments is inextricably linked to what the MCOs are paying SAH. (*Id.* ¶¶ 76, 86, 114.) And all such billing disputes are governed by the provisions in the Provider Contracts that, for example, require the MCOs to adjust payments on submitted claims. (*E.g.*, ECF No. 78-1, Ex. A, § 4.5; ECF No. 79, Ex. A, § VI(A) and Exhibit I; ECF No. 83 (citing §§ 5.1–5.5).)

- **Claim Denials.** SAH alleges that its claims "have been denied by the MCOs at rates that are multiples of those Saint Anthony experienced in the past" and that "[o]ften claims are denied because of administrative paperwork delays by the MCOs." (ECF No. 131, ¶¶ 63, 65.) Such disputes arise out of and relate to the Provider Contracts, including the provisions addressing claim denials, rejections and adjustments. (*E.g.*, ECF No. 78-1, Ex. A, §§ 4.4–4.5; ECF No. 83 (citing §§ 5.1–5.5).)

- **Delays in Payment.** SAH alleges that "[t]he MCOs regularly delay making payments for claims even after the MCO determines that the claim is valid and owed" and that it "has had to wait anywhere from 90 days to 2 years to be paid by MCOs." (ECF No. 131, ¶ 88.) SAH also alleges that "Meridian had an average monthly rate of only 39.9% of claims paid within 30 days, with some months with no claims that were submitted by Saint Anthony paid within 30 days." (*Id.* ¶ 89.)

---

[2] (*See* ECF No. 78-1, Ex. A, §§ 6.1, 6.2 (covering any disputes "perceived" by the parties under the Provider Contract, including billing disputes); ECF No. 79, Ex. A, § XIII(2) (covering "any dispute . . . arising out of, relating to, involving the interpretation of, or in any other way pertaining to" the Provider Contract); ECF No. 83, 3–4 (covering "[a]ny disputes between the parties arising with respect to the performance or interpretation of" the Provider Contract).)

>As for the other MCOs, SAH claims they "paid on average only 59% of the indisputably clean claims submitted to them by Saint Anthony within 30 days. The 90-day monthly average was 92%." (*Id.*)  This dispute between SAH and the MCOs, like the others, also arises out of and relates to the Provider Contracts. Such disputes are governed by the provisions of the Provider Contracts that address timing requirements for the MCOs to process and pay SAH's claims. (*E.g.*, ECF No. 78-1, Ex. A, §§ 4.3–4.5; ECF No. 83 (citing §§ 5.1–5.5).)

In short, the only reasonable interpretation of the arbitration provisions in the Provider Contracts is that they cover the disputes at issue. To the extent this is debatable, binding precedent emphasizes that the Court "may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Fyrnetics (Hong Kong) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1030 (7th Cir. 2002) (citation omitted); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citations omitted). Consequently, if the Court determines that the arbitration provisions "arguably cover" the disputes between SAH and the MCOs, the Court should find that the second element required to compel arbitration is satisfied. *See Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 741 (N.D. Ill. 2010) (citing *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993)).

Additionally, should SAH contest the issue of scope, that dispute must itself be referred to arbitration. The FAA "allows parties to agree by contract that an arbitrator . . . will resolve threshold arbitrability questions," "so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 527, 530 (2019). Here, the parties clearly and unmistakably delegated scope questions to the arbitrators. Meridian's Provider Contract does so by incorporating alternative sets of rules into its arbitration provision, both of which require arbitrators to resolve scope questions.[3]  IlliniCare's Provider

---

[3] Meridian's Provider Contract states: "either party may seek binding arbitration under either the Rules for Arbitration of the Alternative Dispute Resolutions Service of the American Health Lawyers

Contract does so by, like Meridian, incorporating the AAA's Rules into its arbitration provision. (ECF No. 83, 3–4 (quoting § 9.2).) And BCBSIL's Provider Contract does so by requiring arbitration under JAMS rules, which likewise require arbitrators to resolve any scope issue.[4] Given this clear and unmistakable evidence of delegation, arbitrators must resolve any disputes concerning the scope of the parties' arbitration provisions. *See Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 410 F. Supp. 3d 882, 889 (N.D. Ill. 2019).

### 3. *SAH Has Refused To Arbitrate.*

As for the third arbitrability question, SAH has not proceeded with the contractually required arbitrations of its disputes with the MCOs. Instead, SAH filed its Amended Complaint asking this Court to require HFS to "use all available means" to cause the MCOs: (1) to change their remittances to include certain information SAH deems necessary "to determine the basis for payment, denial of payment, or partial denial of payment, including the core, add-on, adjustor, partial, and other component parts of the payments necessary for Saint Anthony to know it has been paid what it is due"; and (2) to make certain claim payments to SAH. (ECF No. 131, ¶¶ 122, 131.) As the Seventh Circuit has explained, "a plaintiff expresses his intent to submit to a judicial forum by filing a complaint" and "knowing selection of one forum over another and willing participation in the ensuing litigation" is "plainly inconsistent with a desire to arbitrate."

---

Association or the American Arbitration Association." (ECF No. 78-1, Ex. A, § 6.2.2.) These rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," and the arbitrator "shall have the power to determine his or her jurisdiction and any issues of arbitrability." (*See* ECF No. 78-2, R-7; ECF No. 78-3, 3.1.)

[4] BCBSIL's Provider Contract mandates that the parties must submit any disputes which are not resolved by the initial resolution methods "to final, binding and confidential arbitration to JAMS." (ECF 79, Ex. 1, Ex. A, § XIII(2)(B).) The pertinent JAMS rule, Rule 11(b), states that: "[j]urisdictional and arbitrability disputes, including disputes over the formulation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." (*See* https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11.)

*Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 651 (7th Cir. 2000). SAH's refusal to arbitrate here necessitates this Court's intervention.

Pursuant to the foregoing analysis, the requirements to compel arbitration are satisfied here, and the Court should compel arbitration of all of SAH's disputes pertaining to the MCOs.

## B. The Court Should Stay This Action.

### 1. *The Court Must Stay The Arbitrable Disputes.*

When a dispute is referred to arbitration, upon "the application of one of the parties," courts must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. "For arbitrable issues, a § 3 stay is mandatory." *Volkswagen Of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007). As explained above, all of the disputes in the Amended Complaint involving the MCOs should be referred to arbitration; the Court therefore must stay all of these arbitrable issues.[5]

### 2. *The Court Should Exercise Its Discretion To Stay The Entire Matter.*

In addition, the Court should exercise its discretion to stay any non-arbitrable issues that directly or indirectly relate to the MCOs. Such a stay is proper and preferable where, as here, "arbitration might help resolve, or at least shed some light on, the issues remaining in federal court." *See Volkswagen Of Am., Inc.*, 474 F.3d at 972; *see generally* ECF No. 134 (explaining why this entire action should be stayed). In fact, courts regularly stay both arbitrable and non-

---

[5] The Seventh Circuit stated in the concluding paragraph of its decision that it "decline[s] to stay the proceedings in favor of arbitration." *Saint Anthony Hosp.*, 40 F.4th at 519. The Seventh Circuit, however, expressly did not rule on the MCOs' motions to compel arbitration. *Id.* ("The district court did not address this issue, and we decline to do so here as well."). If this Court grants the MCOs' renewed motion to compel arbitration, then a stay is mandatory under Section 3 of the FAA. *Volkswagen*, 474 F.3d at 971. Moreover, after the Seventh Circuit issued its decision, Saint Anthony itself proposed in a joint status report to stay its prompt pay claim pending the outcome of the Supreme Court's decision in *Talevski v. Health and Hospital Corp.*, 6 F.4th 713 (7th Cir. 2021), *cert. granted*, 142 S. Ct. 2673 (2022). (*See* ECF No. 135, 5.) The case for a stay is even more compelling in the light of Saint Anthony's lack of urgency with respect to its prompt pay claim and its own willingness to stay that claim.

arbitrable issues in cases like this where there are overlapping facts and issues and the resolution of any individual issue risks inconsistent results.[6] *See, e.g.*, *Elsasser v. DV Trading, LLC*, No. 17-CV-04825, 2020 WL 1248667, at *11 (N.D. Ill. Mar. 16, 2020) (staying litigation because nonarbitrable claim runs "a substantial risk of overlapping with facts and issues likely to arise in" arbitration); *In re Dealer Mgmt. Sys. Antitrust Litig.,* No. 18-CV-864, 2020 WL 832365, at *7 (N.D. Ill. Feb. 20, 2020) (staying litigation because the risk of inconsistent rulings is significant and the court would end up duplicating work if the action was not stayed).

In sum, the Court should stay this entire matter while the MCOs arbitrate their disputes with SAH. *See Volkswagen Of Am., Inc.*, 474 F.3d at 971 (recognizing that such a procedure may be necessary to avoid "inconsistent rulings because the pending arbitration is likely to resolve issues material to [the] lawsuit" and that district courts abuse their discretion to determine whether they will stay non-arbitrable issues when they risk "inconsistent rulings because the pending arbitration is likely to resolve issues material to [the] lawsuit").

## V.  CONCLUSION.

For all of these reasons, the MCOs respectfully request that the Court grant this Motion, compel SAH to arbitrate its disputes with the MCOs and stay this entire action pending the completion of the Arbitration.

---

[6] Here, there is substantial overlap between Saint Anthony's prompt pay and transparency claims. Saint Anthony itself makes such a connection when it asserts that the MCOs' purported lack of transparency "obscures the extent to which the MCO's fail to pay Saint Anthony in compliance with the Prompt Pay Requirement." (*See* ECF No. 131, ¶ 28; *see also id.* ¶ 76 ("Due to the lack of notice and transparency, however, Saint Anthony has been unable to determine the nature and extent of the MCOs' underpayments.").) According to Saint Anthony, "The guess work created by the MCOs [sic] lack of transparency makes it impossible to know if Saint Anthony has been paid properly. What is known, however, is the bottom line: Saint Anthony is being paid much less than before the Medicaid managed care expansion under the prior administration." (*Id.* ¶ 86; *see also id.* ¶ 114.) Saint Anthony alleges that this purported lack of transparency deprives it of "full payment" from the MCOs. (*Id.* ¶¶ 120–21.) Given the overlap between these two claims, it makes little sense to proceed with litigating any non-arbitrable portion of the case (if any) unless and until an arbitrator decides the arbitrable portions of the case. Staying the entire case would avoid unnecessary and costly piecemeal litigation and duplicative discovery.

Dated: November 23, 2022

Respectfully submitted,

| Meridian Health Plan of Illinois, Inc. | IlliniCare Health Plan |
|---|---|
| By: /s/ *Steven T. Whitmer*<br>　　One of its Attorneys | By: /s/ *Kristin B. Ives*<br>　　One of its Attorneys |
| Steven T. Whitmer (ARDC 6244114)<br>swhitmer@lockelord.com<br>LOCKE LORD LLP<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Phone: (312) 443-0700 | Kirstin B. Ives (ARDC 6289952)<br>kbi@falkenbergives.com<br>Megan A. Zmick<br>FALKENBERG IVES LLP<br>230 W. Monroe Street, Suite 2220<br>Chicago, Illinois 60606<br>Phone: (312) 566-4803 |

Blue Cross and Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company

By: /s/ *Kevin D. Tessier*
　　One of its Attorneys

Martin J. Bishop, Esq. (ARDC 6269425)
mbishop@reedsmith.com
Kevin D. Tessier, Esq. (ARDC 6238232)
ktessier@reedsmith.com
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Phone: (312) 207-1000

## **CERTIFICATE OF SERVICE**

      I, Steven T. Whitmer, an attorney, hereby certify that I caused to be served a copy of the foregoing JOINT MOTION TO COMPEL ARBITRATION AND STAY ACTION on all counsel of record through the ECF system on this 23rd day of November, 2022.

                                          By:  /s/ *Steven T. Whitmer*

Steven T. Whitmer
swhitmer@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Phone: 312.443.1869
Fax:    312.896.6569

*Counsel for Meridian Health Plan of Illinois, Inc.*